ALLAN S. LEHMAN, CECILE S. LEHMAN, HERBERT H. LEHMAN AND MONROE C. GUTMAN, AS EXECUTORS OF THE ESTATE OF HAROLD M. LEHMAN, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 86829. Promulgated January 3, 1939.

18

*Edgar J. Bernheimer, Esq.*, and *Sydney J. Schwartz, Esq.*, for the petitioners.

*Ralph F. Staubly, Esq.*, for the respondent.

### OPINION.

SMITH: This is a proceeding for the redetermination of a deficiency in estate tax in the amount of $734,927.19, only $268,113.57 of which is in controversy.

The petitioners are the executors of the estate of Harold M. Lehman, who died a resident of the city of New York on November 14, 1933. The executors filed an estate tax return for the decedent which showed a net estate of approximately $5,000,000. Upon the audit of the estate tax return the respondent added to the gross estate $715,-844.20 representing the value, at the date of death, of the assets of two trust estates created by the decedent on December 6, 1930, and disallowed the deduction from the gross estate of $68.43, $1,631.71, and $41,552.22 representing payments made by the executors in the settlement of certain actions brought against a banking concern doing business under the firm name and style of Lehman Brothers, defendants, in the Supreme Court of the State of New York, County of New York. He also disallowed the deduction of $6,942.21 claimed by the executors as administration expenses paid during the years 1934 and 1935 for investment advisory service rendered by certain individuals for the benefit of the estate. The respondent admits error in the disallowance of the deductions of $68.43, $1,631.71, and $41,-552.22 on account of the claims referred to above and paid by the executors for the account of the estate. This leaves in issue only the questions whether the respondent correctly included in the gross estate $715,844.20 representing the value of the assets of the two trust estates referred to above, and the deduction from the gross estate of investment advisory expenses in the amount of $6,942.21.

All of the facts have been stipulated. They are summarized as follows:

The decedent, Harold M. Lehman, on December 6, 1930, executed two trust indentures by which he transferred to Allan S. Lehman, Herbert Lehman, and himself, as trustees, certain assets to be held in trust for the benefit of his brother, Allan S. Lehman, for life with

remainder to his (Allan's) children, or their lawful issue, or to the lawful issue of the grantor. Simultaneously with the creation of those trusts by the decedent, his brother, Allan S. Lehman, created two identical trusts conveying to himself, Harold M. Lehman (the decedent), and Herbert Lehman, as trustees, identical securities for the benefit of the decedent for life and thereafter for the benefit of decedent's children, or their lawful issue, or the lawful issue of the grantor.

The assets and securities so transferred to each of the above described trusts consisted of a one-half part of certain assets and securities of each of the grantors which had been carried on the books of Lehman Brothers under the designation of "S. M. Lehman, trustee."

The assets transferred to the two trusts created by the decedent had a value at the date of his death of $715,844.20.

Regarding the creation of these trusts by the decedent and Allan S. Lehman, it is stipulated as follows:

The circumstances under which * * * trusts were created by decedent and Allan S. Lehman were that in the year 1885 there had been set aside by Sigmund M. Lehman, the father of decedent and Allan S. Lehman certain monies and/or securities which were added to from time to time thereafter for decedent and Allan S. Lehman. These were the securities referred to in all of the indentures of trust as "carried on the books of Lehman Brothers under the designation 'S. M. Lehman, trustee'." When these securities came into the possession of Allan S. Lehman and decedent they both felt a desire to make provision for their own children and establish the future of their children securely as had been done by their father for his children. The capital of which the fund so designated on the books of Lehman Brothers consisted, had never been used or involved in the business of decedent or Allan S. Lehman and was not regarded as necessary for such purpose and at that time both decedent and Allan S. Lehman were possessed of other means and capital that appeared amply sufficient for all business or personal requirements and it was desired to continue the segregation of said capital separate and relieved so far as possible from any hazards or contingencies of business or commercial transactions for the benefit of their children and also of the decedent and his brother. Decedent and Allan S. Lehman therefore determined to devote the entire capital acquired by them as aforesaid to the establishment of trusts of which they themselves should enjoy the income during their lives and of which the income should be secured to their children in the same manner.

With the aforesaid purposes in view upon the advice of counsel the four indentures of trust dated December 6, 1930, * * * were drawn and it was upon the advice of counsel to decedent and Allan S. Lehman in order to more securely effectuate the purpose that the said securities and assets should never be at the hazard of the business commitments or transactions of decedent or his brother, that decedent became the donor of the securities and assets referred to in the two indentures of trust [exhibits 1 and 2 of the stipulation] * * * and that Allan S. Lehman became the donor of the securities and assets referred to in the two indentures of trust [exhibits 3 and 4 of the stipulation] * * * That the said indentures of trust were prepared by and under the direction

of Edgar J. Bernheimer a member of the Bar of the State of New York who was the counsel of said decedent and Allan S. Lehman. * * * decedent and Allan S. Lehman both consulted said Bernheimer as to the advisability of establishing said trusts. At said time they stated that their motives and intentions were ultimately to secure to their own children these monies which they felt as a matter of sentiment their father would have liked to see go to his grandchildren. At that time they both stated to said Bernheimer that their means were very large and all that could reasonably be required for the purposes of their banking business. They stated at the same time that their then means outside of the securities and assets that ultimately became the corpora of these trusts were far in excess of any possible immediate claims of creditors but they stated that they realized that if these means became part of their capital and invested in their business and subject to unavoidable business risks and uncertainties, especially in view of the then current difficult economic situation, there might be a possibility that they would ultimately be dissipated. After conferences with and advice by said Bernheimer, it was decided to establish the trusts in question so that the monies could be segregated and kept aside from such capital as was subjected to ordinary business risks and investment to the end that so far as humanly possible the children would be secured in the ultimate enjoyment of it and the donors would be secured in the immediate enjoyment of it.

With this in view said Bernheimer advised the establishment of the said trusts and advised further that in order the better to accomplish the purposes of decedent and Allan S. Lehman and assure for all time the segregation of said monies the trusts be established in the manner appearing from the instruments themselves, the said Allan S. Lehman establishing trusts for decedent and decedent's children in consideration of the decedent establishing identical trusts for the benefit of his brother Allan S. Lehman and Allan's children.

At the time when said instruments were drawn and said trusts established there was never any mention or suggestion of the approaching demise of either decedent or said Allan S. Lehman nor of their state of health and there was never any indication that either of said individuals regarded his health as precarious or his approaching demise as a thing to be considered otherwise than in the natural course of life in the far future. At that time both decedent and Allan S. Lehman were in unusually robust and vigorous health, were extremely active in their business affairs as members of the banking firm of Lehman Brothers of 1 William Street, New York City, and decedent especially was accustomed to frequent excursions for the purpose of fishing and shooting. Decedent at that time was 41 years of age and was of a very athletic tendency and it was his usual custom in addition to his other physical and athletic activities to play at least several sets of tennis or games of handball every day. That decedent up to the time of the making of the transfers had never suffered from any serious illness.

Decedent at the time of the making of the transfers was worth approximately five million dollars in excess of the securities and assets transferred in trust by the indentures of trust dated December 6, 1930.

Decedent continued to be in good health and vigor and continued his daily business, athletic and social pursuits from December 6, 1930, until he was admitted to Mt. Sinai Hospital on October 24, 1933 for the operation for appendicitis as a result of which he died on November 14, 1933, the entire duration of his illness being 21 days.

All of the above described transfers of December 6, 1930, were made in the City of New York, State of New York.

The determinable annual income of the securities and assets transferred in trust by Allan S. Lehman pursuant to the indentures of trust executed by him December 6, 1930, was, at the time of the transfer, $48,431.24. The appropriate factor for determining the then present value of decedent's right to receive such income during his lifetime, as prescribed by the Treasury Department regulations, was 14.86102. The total value of the securities and assets so transferred in trust by Allan S. Lehman, pursuant to the indentures of trust, was on December 6, 1930, $937,523.18.

The value on December 6, 1930, of decedent's right to receive the income from the securities and assets transferred in trust pursuant to the above referred to indentures of trust was $719,737.63.

It is stipulated that:

* * * the execution of the trusts and the making of the transfers effected thereby was not prompted by a condition of body or mind that would have led the decedent to believe that his death was imminent or near at hand, or that his death was to be expected within the reasonably distant future.

Under the trust indentures executed by the decedent on December 6, 1930, the income of the trusts was payable to Allan S. Lehman for the period of his life. Upon his death the income, and eventually the corpus, of one of the trusts was to be paid to Allan's son, Orin, and the income and the corpus of the other trust to Allan's daughter, Ellen. In the event of the death of either Orin or Ellen before the death of Allan the income and the corpus were to be paid to their issue *per stirpes* and not *per capita*, or, in default of any such child or children or issue of the deceased children, to the then living issue of the grantor. The grantor was never to receive any of the income or corpus of either of the trusts created by him.

The trusts created by the decedent and by Allan S. Lehman were reciprocal. The decedent was to receive the income of the trusts created by Allan during the period of his life and upon his death his (decedent's) children were to receive the income and the corpus.

Each of the trusts created by the decedent provided in part as follows:

FOURTH: The trust hereby created shall be irrevocable, except that said Allan S. Lehman, shall have the right at any time or from time to time prior to December 31, 1935, upon notice in writing to the Trustees of his intention so to do, to withdraw from the principal of the trust hereby created such amount of money as he shall specify in such notice, not exceeding $75,000, and the Trustees shall thereupon pay the same to him free and clear of said trust.

The trusts created by Allan S. Lehman contained a like paragraph giving the decedent the right to withdraw $75,000 from each trust up to December 31, 1935. The decedent never exercised his right to withdraw any part of the principal of the trust estates created by his brother, Allan.

22

The trusts under consideration were all irrevocable. Neither of the grantors retained any right whatever to amend, alter, or revoke the trusts created by him. There is no provision in the trust instruments limiting the right of the beneficiaries to assign or otherwise alienate their interests in the trusts.

During the years 1934 and 1935 the executors expended $6,942.21 for investment advisory service. During these years the decedent's estate was in the process of administration. Under the terms of the decedent's will the executors were required to keep the entire residue of the estate invested for the benefit of the beneficiaries of the various trusts created under the will. During the year 1934 all assets in the hands of the executors amounted to a sum in excess of five million dollars. During the year 1935 the assets in the hands of the executors amounted to a sum in excess of one and one-half million dollars. The executors have waived commissions, by instruments severally signed by them.

In a proceeding brought in the Surrogate's Court, County of New York, to settle judicially the intermediate account of the executors, no surcharge was made against the executors and the expenditure of sums for investment advisory service, as aforesaid, during the period of administration, was allowed and approved as a proper deduction made by the executors for administration expenses. The executors have received no commissions or remuneration of any kind for acting as such. It is stipulated that "*  *  *  the expenditure of the said sum of $6,942.21 was reasonable in amount."

We shall consider first the question as to whether there should be included in the gross estate of the decedent $715,844.20, the stipulated value on November 14, 1933, of the assets transferred in trust by the decedent by the indentures of trust dated December 6, 1930. In his deficiency notice the respondent held that the amount was properly includable in the decedent's gross estate under the provisions of section 302 (c) and (d) of the Revenue Act of 1926, as amended.

Section 302 (c) and (d) of the Revenue Act of 1926, as amended by section 803 (a) of the Revenue Act of 1932, reads as follows:

SEC. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

*       *       *       *       *       *       *

(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, *or of which he has at any time made a transfer, by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property, or (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom;* except in case

of a bona fide sale for an adequate and full consideration in money or money's worth. * * * [Italics supplied.]

(d) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. * * *

The matter in italics was added by section 803 (a) of the Revenue Act of 1932.

Since the transfers in question here were made prior to March 3, 1931, the amendment of section 302 (c) effected by section 803 (a) of the Revenue Act of 1932, set forth in italics in this subdivision quoted above, is not applicable; for it was held in *Hassett* v. *Welch*, 303 U. S. 303, that the amendment had no retroactive effect and that where the transfer was made prior to the effective date of the amendment, or the amendment effected by Joint Resolution No. 131 adopted March 3, 1931, the property transferred was not to be included in the gross estate simply because the grantor or settlor reserved the right to receive the income of the property transferred during the period of his natural life.

In his brief the respondent states as follows:

Respondent contends that the disposition effected by the decedent [by the two trusts created December 6, 1930], respecting his interest in the securities involved, and whether viewed from the standpoint of the dispositions made by his brother through the trusts executed by him (Exhibits 3 and 4 of Stipulation), or from the standpoint of the trusts executed by the decedent (Exhibits 1 and 2), were transfers intended to take effect in possession or enjoyment at or after the decedent's death, within the purview of Section 302 (c) of the Revenue Act of 1926, and taxable as such. This contention is not rested upon the new classifying provision incorporated in said Section, by Section 803 (a) of the Revenue Act of 1932, incorporating therein the amendment effected by the Joint Resolution of the Congress adopted March 3, 1931, as stated by petitioners. * * * On the contrary, as heretofore indicated, respondent's contention is rested upon the transfer of the *right* to possession or enjoyment, not the passing of the *fact* of possession or enjoyment or actual possession or enjoyment (dominion) out of the decedent at death. * * *

A predicate for this contention, as stated in the respondent's brief, is that "the Federal estate tax, is a strict succession excise." This is a statement of what the Federal estate tax is not—not of what it is. If anything is settled with respect to the Federal estate tax law, it is that it is not a "succession excise" tax.

In the early case of *Y. M. C. A. of Columbus, Ohio* v. *Davis*, 264 U. S. 47, Mr. Chief Justice Taft, in referring to the estate tax imposed by section 401 of the Revenue Act of 1918, stated:

* * * It was not a tax upon succession and receipt of benefits under the law or the will. It was death duties, as distinguished from a legacy or succes-

sion tax. What this law taxes is not the interest to which the legatees and devisees succeeded on death, but the interest which ceased by reason of the death. * * *

Mr. Justice Holmes, writing the opinion of the court, similarly declared in *Edwards* v. *Slocum*, 264 U. S. 61, that the Federal estate tax:

* * * is a tax upon a transfer of his net estate by a decedent, a distinction marked by the words that we have quoted from the statute, and previously commented upon at length in *Knowlton* v. *Moore*, 178 U. S. 41, 49, 77, 20 Sup. Ct. 747, 44 L. Ed. 969. It comes into existence before and is independent of the receipt of the property by the legatee. It taxes, as Hansen, Death Duties, puts it in a passage cited in 178 U. S. 49, 20 Sup. Ct. 751 "not the interest to which some person succeeds on a death, but the interest which ceased by reason of the death." * * *

The point under discussion is clearly illustrated by the two Supreme Court cases, *Nichols* v. *Coolidge*, 274 U. S. 531, and *Coolidge* v. *Long*, 282 U. S. 582. In the former case the statute involved was the Federal estate tax law; in the latter case, the Massachusetts succession tax law. In *Nichols* v. *Coolidge*, Mr. Justice Reynolds, writing for a unanimous court, quoted with approval the above excerpt from *Edwards* v. *Slocum*, *supra*, and stated further:

The exaction is not a succession tax like the one sustained by *Scholey* v. *Rew*, 23 Wall. 331, 23 L. Ed. 99; *Keeney* v. *New York*, 222 U. S. 525, 32 S. Ct. 105, 56 L. Ed. 299, 38 L. R. A. (N. S.) 1139. The right to become beneficially entitled is not the occasion for it. There is no claim that the transfers were made in contemplation of death or with purpose to evade taxation. The provision applicable in such circumstances is not relied on and the extent of congressional power to prevent evasion or defeat of duly imposed exactions need not be discussed.

The distinction is clearly pointed out in the dissenting opinion in *Coolidge* v. *Long*, *supra*, written by Mr. Justice Roberts, as follows:

The one is collected on the transfer of his estate by a decedent; it taxes not that to which some person succeeds upon a death, but that which ceased by reason of death. *Nichols* v. *Coolidge*, 274 U. S. 531, 537, 47 S. Ct. 710, 71 L. Ed. 1184, 52 A. L. R. 1081; *Edwards* v. *Slocum*, 264 U. S. 61, 62, 44 S. Ct. 293, 68 L. Ed. 564. The other is laid on the right to become beneficially entitled to property on the death of its former owner. *Keeney* v. *Comptroller of State of New York*, 222 U. S. 525, 533, 32 S. Ct. 105, 56 L. Ed. 299, 38 L. R. A. (N. S.) 1130; *Nichols* v. *Coolidge*, 274 U. S. at page 541, 47 S. Ct. 710, 71 L. Ed. 1184, 42 A. L. R. 1081.

The latter type of excise has existed in Massachusetts for years, and the courts of that commonwealth have consistently construed the statutes as they did in this case.

Reliance is also placed by the respondent in his brief upon *Klein* v. *United States*, 283 U. S. 231. In that case the estate tax was sustained upon the ground that the transfer was in fact intended to take effect in possession and enjoyment or after death. The deed

provided in the *habendum* clause that the grantee should have the land for the term of her natural life, but that if she died before the grantor the reversion in fee should be and remain vested in the grantor. It was further provided that "on condition that the grantee survive the grantor, then the grantee should, by virtue of this conveyance, take and hold the land in fee simple." In sustaining the tax the Supreme Court said:

* * * The life estate is granted with an express reservation of the fee, which is to "remain vested in said grantor" in the event that the grantee "shall die prior to the decease of said grantor." By the second clause the grantee takes the fee in the event—"and in that case only"—that she shall survive the grantor. It follows that only a life estate immediately was vested. The remainder was retained by the grantor; and whether that ever would become vested in the grantee depended upon the condition precedent that the death of the grantor happen *before* that of the grantee. The grant of the remainder, therefore, was contingent. * * *

The *Klein* case is an excellent illustration of the meaning of the phrase "transfer * * * intended to take effect in possession or enjoyment at or after his death," contained in section 302 (c). Since the title to the assets to be transferred remained vested in the grantor until his death, the transfer did not take effect until the death of Klein.

By the indentures of trust executed by the decedent, Harold M. Lehman, on December 6, 1930, he turned over to the trustees all of his right, title, and interest in and to the assets forming the corpora of the trust estates. In *May* v. *Heiner*, 281 U. S. 238; *Reinecke* v. *Northern Trust Co.*, 278 U. S. 339; *Shukert* v. *Allen*, 273 U. S. 545; *McGregor* v. *Commissioner*, 82 Fed. (2d) 948; and *Kaufman* v. *Reinecke*, 68 Fed. (2d) 642; it was held that a' transfer in trust of the character here involved takes effect irrevocably at the time of the actual transfer of assets to the trustee and that, in the absence of actual contemplation of death, assets thus transferred are not includable in the gross estate.

We think that the transfers in question were not transfers to take effect in possession and enjoyment at the date of death of the decedent.

We think, too, that the transfers were not made in contemplation of death within the meaning of section 302 (c) of the Revenue Act of 1926. The leading case upon this point is *United States* v. *Wells*, 283 U. S. 102. In that case the Court, speaking through Mr. Chief Justice Hughes, said:

* * * The words "in contemplation of death" mean that the thought of death is the impelling cause of the transfer, and while the belief in the imminence of death may afford convincing evidence, the statute is not to be limited, and its purpose thwarted, by a rule of construction which in place of contem-

plation of death makes the final criterion to be an apprehension that death is "near at hand."

If it is the thought of death, as a controlling motive prompting the disposition of property, that affords the test, it follows that the statute does not embrace gifts inter vivos which spring from a different motive. Such transfers were made the subject of a distinct gift tax since repealed. As illustrating transfers found to be related to purposes associated with life, rather than with the distribution of property in anticipation of death, the Government mentions transfers made "for the purpose of relieving the donor of the cares of management or in order that his children may experience the responsibilities of business under his guidance and supervision." The illustrations are useful but not exhaustive. The purposes which may be served by gifts are of great variety. It is common knowledge that a frequent inducement is not only the desire to be relieved of responsibilities, but to have children, or others who may be the appropriate objects of the donor's bounty, independently established with competencies of their own, without being compelled to await the death of the donor and without particular consideration of that event. There may be the desire to recognize special needs or exigencies or to discharge moral obligations. The gratification of such desires may be a more compelling motive than any thought of death.

The Court further observed:

* * * transfers in contemplation of death are included within the same category, for the purpose of taxation, with transfers intended to take effect at or after the death of the transferor. The dominant purpose is to reach substitutes for testamentary dispositions and thus to prevent the evasion of the estate tax. * * * As the transfer may otherwise have all the indicia of a valid gift inter vivos, the differentiating factor must be found in the transferor's motive. Death must be "contemplated," that is, the motive which induces the transfer must be of the sort which leads to testamentary disposition. * * *

In *Thomas C. Boswell et al., Executors*, 37 B. T. A. 970, the Board stated:

* * * We are required to determine whether "the impelling cause" for that transfer was decedent's contemplation of his death. *United States* v. *Wells*, 283 U. S. 102. "Contemplation" is defined as the "act of the mind in considering with attention." Webster's New International Dictionary, 2d ed. * * *

The circumstances under which the trusts were created are described in the stipulated facts as quoted above. It appears from those facts that the decedent and his brother, Allan, shortly after coming into the possession of their portions of a trust estate created by their father in 1885, desired to make the same provision for their children as had been made for themselves by their father. The trust assets thus received were not needed by the sons in their banking business. They did not want those trust assets to be subject to the hazards of business and the trusts were created in the form in which they were created for that reason.

Both the decedent and his brother were in excellent health. In the negotiations leading up to the creation of the trusts no reference was

made by either of the brothers to any thought of death. So far as could be seen they had many years of life before them.

Since the trusts were created more than two years prior to the death of the decedent, the statute makes no presumption that the transfers were made in contemplation of death. There is nothing in the record from which it might be inferred that contemplation of death was the predominant motive for the making of the transfers, which is the criterion for the determination in accordance with *United States* v. *Wells, supra.* The stipulation of facts is convincing that the transfers were not made in contemplation of death.

In his brief the respondent makes a further contention that if the principal of the trust funds may not be included in the gross estate as having been transferred in contemplation of or intended to take effect in possession or enjoyment at or after death, it must, nevertheless, be held that the transfers are to be included in the gross estate to the extent of $150,000, because by the reciprocal trusts the decedent gave his brother, Allan, the right to withdraw from the corpora of the trusts created by him $150,000, in exchange for the right which his brother, Allan, gave him to withdraw $150,000 from the trusts created by Allan.

It can not be questioned that the decedent gave to his brother, Allan S. Lehman, the right to receive the income for life of the two trust estates created by him and a right to withdraw $150,000 from the principal of the trust estates during his life or until December 31, 1935, in exchange for similar rights of the decedent in the trust estates created by Allan. Up to the date of his death the decedent had the power to bring into his own estate $150,000 of the corpora of the trusts created by Allan. The right to make this withdrawal out of the reciprocal trusts created by Allan was the equivalent of a right in the decedent to withdraw that amount from the trust estates which he had created. This right had a value at the time of decedent's death of $150,000. It was an interest in property "which ceased by reason of the death." *Edwards* v. *Slocum, supra.* We are of the opinion that the respondent did not err in including the $150,000 in the gross estate of the decedent.

The final question for consideration is whether the $6,942.21 expended by the executors for investment advisory service during the years 1934 and 1935 is a legal deduction from the gross estate as an administration expense. The respondent submits that payments are not deductible from the gross estate as administration expenses because they were made to enable the petitioners to keep the residuary estate profitably invested for the benefit of the beneficiaries under the testamentary trust created under the decedent's will. The stipulated facts show that the Surrogate's Court allowed the payments

as administration expenses. The Board has no doubt that they were expenses legally incurred and paid by the executors in the administration of the estate and that they are a legal deduction from the gross estate.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

---

BLACK, dissenting: I agree with the majority opinion wherein it holds that the corpus of the two irrevocable trusts executed by decedent, Harold M. Lehman, December 6, 1930, may not be included in decedent's gross estate under the provisions of section 302 (c) of the Revenue Act of 1926. It seems clear that both trusts were irrevocable and were not made in contemplation of death and were not intended to take effect in possession or enjoyment at or after death.

I do not agree to that part of the majority opinion which holds that $150,000 should be included as a part of decedent's gross estate under section 302 (d) of the Revenue Act of 1926 because at the time of decedent's death he had the right to withdraw $150,000 from two trusts which were simultaneously executed by his brother Allan S. Lehman. Manifestly if the right to withdraw this $150,000 had survived decedent's death and was available as an asset to decedent's estate, then it is includable as a part of decedent's estate. This inclusion would be by reason of the provisions of section 302 (a) of the Revenue Act of 1926, and not by reason of section 302 (d) of the same act.

Section 302 (d) reads:

(d) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. * * *

In the two trusts which decedent executed he retained no power to make any change in the trust corpus, either alone or in conjunction with any other person. He did confer upon his brother Allan the right to withdraw $75,000 from the corpus of each trust at any time or from time to time prior to December 31, 1935. This right, so far as the record shows, Allan possessed at the time of decedent's death and it continued until December 31, 1935. But this was no reservation of a power to decedent, and the fact that his brother Allan conferred upon decedent similar rights in two trusts which Allan executed at the same time, it seems to me, does not affect the situation under section 302 (d).

Congress can of course tax such transactions by means of the gift tax and has done so in revenue acts enacted subsequent to the dates of the execution of the trusts herein involved. I do not believe however that section 302 (d) of the Revenue Act of 1926 can properly be construed so as to make includable in decedent's gross estate the $150,000 which the majority opinion holds should be included. When decedent died his right to withdraw that $150,000 from trusts which his brother Allan had created ceased and nothing passed from the dead to the living. *Hasbrouck* v. *Bookstaver*, 114 N. Y. S. 949.

Article 13 of Treasury Regulations 80 (1937 Ed.), Estate Tax, would seem to cover the situation which we have here, where it says: "Nor should anything be included on account of an interest or an estate limited for the life of the decedent."

In my judgment the $150,000 in question was so limited and is therefore not includable as a part of decedent's gross estate.

ARUNDELL, VAN FOSSAN, LEECH, and ARNOLD agree with this dissent.