ESTATE OF FLORENCE B. MORENO, DECEASED, HARRIET MORENO BISCHOFF AND ST. LOUIS UNION TRUST COMPANY, EXECUTORS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 62523. Filed July 26, 1957.

*William W. Crowdus, Esq.*, for the petitioner.
*Hunter D. Heggie, Esq.*, for the respondent.

MULRONEY, *Judge:* The respondent determined a deficiency in the estate tax of the Estate of Florence B. Moreno in the amount of $38,649.89. The sole issue in the case is whether the value of the insurance trust of decedent's husband, Theodore, is includible in decedent's estate for Federal estate tax purposes under section 811 (c) (1) (B) and (c) (1) (C), Internal Revenue Code of 1939.

FINDINGS OF FACT.

Some of the facts have been stipulated and are found accordingly.

Florence B. Moreno died at the age of 74 on May 3, 1952, and the Federal estate tax return for her estate was filed with the district director of internal revenue at St. Louis, Missouri. On December 29, 1939, Florence executed an irrevocable trust to which she transferred $125,000 face value paid-up insurance on her own life. The trust provided that if Florence died before her husband, Theodore, he would receive the income from the trust for his life with remainder to their children, grandchildren, and other heirs. It further allowed the trustees to invade the corpus of the trust to provide for Theodore's

reasonable care and comfort, or because of his illness or infirmity, or by reason of any other emergency affecting him. The St. Louis Union Trust Company, a corporation of St. Louis, Missouri, and Theodore were designated as trustees. On the same day, to wit, December 29, 1939, Theodore Moreno executed an amendment to an existing trust which he had earlier created in which he revoked all of the working sections of the original trust and substituted new provisions which were substantially identical with Florence's trust indenture. This amendment made Theodore's trust irrevocable; the corpus of this trust was also $125,000 fully paid-up insurance on his life; the provision was made that Florence would receive the net income from the trust, if she survived him, for the remainder of her life, with the remainder over to their children, grandchildren, and other heirs; and with the same provision of the rights of invasion of the corpus for her reasonable care and comfort, or because of her illness or infirmity, or by reason of any other emergency affecting her.

In both trusts there was a clause to the effect that before assigning the policies to the trustees the grantors had directed the insurance companies to use and apply all dividends toward the purchase of paid-up additional insurance, and the trustees would have no right to change said direction and no right to exercise the loan and surrender provisions of said policies.

Theodore Moreno died June 9, 1953. The two trust instruments were drawn by the same attorney; and George M. Pyle, assistant vice president of the St. Louis Union Trust Company, assisted Florence and Theodore in setting up the two trusts. Both Florence and Theodore examined both trusts before such trusts were executed and the trust officer and the insurance agent who sold them the policies advised the settlors of the trust of the savings in taxes and expenses that would result by reason of their divesting themselves of portions of their property by irrevocable trusts. Florence and Theodore filed gift tax returns in connection with the trusts and paid the gift tax due on said returns. The probate inventories of the estates of Florence and Theodore each show an appraised value of a little less than $1,000,000.

Florence's trust served as a consideration for the amendment to Theodore's trust executed contemporaneously with the execution of Florence's trust and Florence was the settlor of Theodore's trust, which consisted at her death of the unmatured policy of insurance on his life.

OPINION.

The principal question here is whether the trust of which Theodore was the settlor is includible in Florence's estate for Federal estate tax purposes under section 811 (c) (1) (B) and (c) (1) (C), Internal Revenue Code of 1939. These subsections provide that the gross estate

of a decedent shall include any property interest that the decedent may have transferred in trust "under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (i) the possession or enjoyment of, or the right to the income from, the property, or (ii) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; or * * * intended to take effect in possession or enjoyment at or after his death."

Respondent argues that the unmatured policy of insurance on Theodore's life held by that trust is includible in Florence's estate under the doctrine of reciprocal or crossed trusts, as announced in *Allan S. Lehman et al., Executors*, 39 B. T. A. 17, affd. 109 F. 2d 99. In the cited case the question was under section 302 (d) of the Internal Revenue Act of 1926 providing for inclusion in a decedent's taxable estate, of property transferred in trust to the extent that decedent had power "to alter, amend or revoke," the enjoyment of it. The following quotations from the opinion of the Court of Appeals for the Second Circuit give the facts and holding (109 F. 2d at 100) :

The decedent transferred his share in trust for his brother for life, remainder to the brother's issue, with the right in the brother to withdraw $150,000 from principal, and in exchange the brother transferred his share on similar trusts for the decedent and issue, with a similar right in the decedent to withdraw $150,000. The properties transferred were indistinguishable. The fact that the trusts were reciprocated or "crossed" is a trifle, quite lacking in practical or legal significance. * * *

* * * * * * *

The decisive point is that the decedent by transfer of his share to the brother or for the brother's use or according to the brother's direction caused the brother to make a transfer of property in trust under which the decedent had the right to withdraw $150,000 from principal. While section 302 (d) speaks of a decedent having made a transfer of property with enjoyment subject to change by exercise of power to alter, amend or revoke in the decedent, it clearly covers a case where the decedent by paying a quid pro quo has caused another to make a transfer of property with enjoyment subject to change by exercise of such power by the decedent. * * *

The holding in the case was (109 F. 2d at 100) :

the transfer by the decedent's brother, having been paid for and brought about by the decedent, was in substance a "transfer" by the decedent, and the property so transferred formed part of his taxable estate * * *

The question of whether the doctrine of the *Lehman* case will be applied—whether the trusts are crossed or reciprocal trusts—is one of fact. It is simply a question of whether one trust was made in consideration of the other. *Hanauer's Estate* v. *Commissioner*, 149 F. 2d 857, certiorari denied 326 U. S. 770, affirming a Memorandum Opinion of this Court; *Orvis* v. *Higgins*, 180 F. 2d 537; *Cole's Estate* v. *Com-*

*missioner*, 140 F. 2d 636, affirming a Memorandum Opinion of this Court.

We have made a finding of fact in this case that the trust created by decedent served as consideration for the trust she caused her husband, Theodore, to make—in short, that each created his or her respective trust in consideration of the other. That seems to us almost an irresistible conclusion from all of the undisputed facts and circumstances. The two irrevocable insurance trusts are substantially identical in terms except that Florence's indenture gives Theodore a life income in the trust property after her death with the right to invade the corpus to provide for his reasonable care and comfort, or because of his illness or infirmity, or by reason of any other emergency affecting him, and Theodore's trust does the same for Florence. The corpora of the two trusts are the same amount, or $125,000 paid-up insurance. They were executed simultaneously after participation by both contemporaneously in the negotiations with the trust officer and the attorney who set up the trusts and drew the trust instruments. In the light of all of this evidence we could not make a finding that each made his or her trust independently.

Petitioner points to the evidence of the New York Life Insurance Company agent who sold the policies to Florence. He was a long-time friend of decedent and her husband. This evidence was to the effect that the agent figured out that by each spouse's divesting himself or herself of a certain portion of his or her estate through an irrevocable trust they would save taxes and other expenses and he and the trust officer advised Florence and Theodore of this saving of taxes and expenses that would result from the execution of such irrevocable trusts. We can believe all of this testimony but it does not negative the existence of an intent to make the trusts reciprocal. To accomplish the tax saving motive it was unnecessary for each to give the other a life interest, after the death of the grantor, in the grantor's property. *Cole's Estate* v. *Commissioner, supra.*

Petitioner argues the trusts were not reciprocal because only the spouse who survived would have the power or right to withdraw any income or corpus from the life insurance trust and so long as they both lived, neither would have income or withdrawal rights from either trust. The question is whether, under the separate trust indentures, each received some beneficial interest in the trust estate of the other, which, after switching grantors, would render the transferred property includible as a part of his or her gross estate for Federal estate tax purposes. When these trusts are uncrossed the settlors would have a contingent life estate in the property considered as transferred in trust by the settlor and the trustees would have rights to invade the corpus. The rights would then be contingent upon the

settlor's surviving the other spouse. When so considered the transferred property would be includible in the deceased's gross estate under the provisions of section 811 (c) (1) (B), 1939 Code. *Marks v. Higgins,* 213 F. 2d 884; *Estate of Carl J. Guenzel,* 28 T. C. 59, and cases therein cited. And this would be true even though Florence predeceased Theodore and received no interest from the property. *Marks v. Higgins, supra.*

It is true that in the trusts in *Marks v. Higgins, supra,* and *Estate of Carl J. Guenzel, supra,* there was a life income interest in the other person after whose death the settlor was to receive the income, while here the other person (Theodore) had no life interest. Still the instant case seems to fall squarely within the Commissioner's Regulations 105, section 81.18, which state that the expression in the statute, "period not ascertainable without reference to his death" includes "a reservation of the right to receive the income from transferred property after the death of another person who in fact survived the decedent * * *." The question of whether a settlor has retained a beneficial interest in property transferred in trust when he retains income after the death of another, is unaffected by whether that other person had a preceding life interest. The beneficial life interest to the settlor is the same in either case.

An additional reason why, after the trusts are uncrossed, the value of Theodore's trust should be included in Florence's estate, is found under section 811 (c) (1) (C). The trust would then allow invasion of the corpus after Theodore's death to provide for Florence's reasonable care and comfort, for her illness or infirmity, or for any other emergency affecting her. Section 811 (c) (1) (C) provides for inclusion in settlor's gross estate the transfers "intended to take effect in possession or enjoyment at or after [settlor's] death." A similar invasion of corpus clause has been held to render the transferred property taxable under the above section in a number of cases. See *Estate of Margaret P. Gallois,* 4 T. C. 840, affd. 152 F. 2d 81; *Estate of Mary V. Cochran,* 9 T. C. 242, affd. 173 F. 2d 504; *Estate of Lelia E. Coulter,* 7 T. C. 1280; and *Blunt v. Kelly,* 131 F. 2d 632.

Illustrative of the holdings in the above cases is this quotation from our Opinion in *Estate of Margaret P. Gallois, supra,* 4 T. C. at 845:

The respondent contends that the corpus of the trust must be included in the decedent's gross estate as a transfer intended to take effect in possession or enjoyment at or after death, since the trust instrument provided that the corpus might be invaded for the benefit of the settlor, and hence it could not be determined until that time whether any of the trust would pass to the named remaindermen.

We think this contention must be sustained. * * *

We hold the trusts were reciprocal and Theodore's trust, consisting of an unmatured policy of insurance on his life, is includible in Flor-

ence's estate for Federal estate tax purposes under the provisions of section 811 (c ) (1) (B). Respondent admits it is the value of the remainder interest in Theodore's trust that should be included in Florence's gross estate. We are a little disturbed by this statement in respondent's brief:

> The petitioner has not raised any objection to the valuation of Theodore's Trust 7047 for estate tax purposes. Since no objection was raised respondent submits the remainder interest is the amount included in the statutory notice, namely $132,512.05. In any event, any value due to Theodore's life would be small because of Theodore's advanced age and to the fact that he lived only one month longer than Florence.

Actually, Theodore lived a year and one month longer than Florence. Without stopping to review the pleadings which we feel could be interpreted as placing the amount in issue, we hold for respondent upon the issue presented but the amount to be included in the decedent's estate will be the value of Theodore's trust as decreased by the value attributable to Theodore's life. Regs. 105, sec. 81.18.

We do not reach respondent's alternative argument that the proceeds of the $100,000 single premium life insurance policy purchased by Florence would be taxable in her estate under the doctrine of *Burr* v. *Commissioner*, 156 F. 2d 871, certiorari denied 329 U. S. 785, affirming a Memorandum Opinion of this Court, and *Conway* v. *Glenn*, 193 F. 2d 965.

*Decision will be entered under Rule 50.*