ESTATE OF LAURA CARTER, DECEASED, ROGER E. CARTER, LAURA C. FAHY, AND ELIZABETH C. RICHARDS, EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ESTATE OF ERNEST TROW CARTER, DECEASED, EDWARD L. RICHARDS AND THE CHASE MANHATTAN BANK (SUCCESSOR BY MERGER TO THE CHASE NATIONAL BANK OF THE CITY OF NEW YORK), EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 62591, 62592. Filed March 17, 1959.

*James A. Glascock, Jr., Esq.*, for the petitioners.
*John M. Doukas, Esq.*, for the respondent.

BRUCE, *Judge:* Respondent determined deficiencies in estate tax as follows:

|  | Deficiency |
| --- | --- |
| Estate of Laura Carter, Docket No. 62591 | $107,012.55 |
| Estate of Ernest Trow Carter, Docket No. 62592 | 59,168.93 |

The issue for decision is whether respondent properly determined that the values of two trusts created by Ernest Trow Carter and Laura Carter, respectively, are respectively includible in the gross estates of Laura and Ernest Trow Carter.

### FINDINGS OF FACT.

The stipulated facts are so found and are incorporated herein by this reference. Ernest Trow Carter (hereinafter referred to as Ernest) and Laura Carter (hereinafter referred to as Laura) were married in 1891. Laura died testate on December 31, 1951, while a resident of Stamford, Connecticut. Petitioners Roger E. Carter, Laura C. Fahy, and Elizabeth C. Richards are the surviving children of Ernest and Laura and are the executors of Laura's estate. The Federal estate tax return for Laura's estate was filed with the district director of internal revenue for the district of Connecticut. Ernest died testate on June 21, 1953, while a resident of Stamford, Connecticut. Petitioners Edward L. Richards and the Chase Manhattan

Bank are the executors of Ernest's estate. The Federal estate tax return for Ernest's estate was filed with the district director of internal revenue for the district of Connecticut.

Laura C. Fahy is a legatee under the will of each decedent. Charles Harold Fahy, Laura C.'s husband, is a legatee under Laura's will.

In 1923 Laura created trusts for each of her three children, Laura C., Elizabeth, and Roger. The corpus of each trust consisted of bonds having an aggregate par value of $25,000, and at various dates thereafter Laura made additions to the corpus of each of those trusts. In May and August of 1935 Laura made gifts of securities having a fair market value of $103,646.08 to each of her two daughters, Laura C. and Elizabeth. On August 16, 1935, Laura established a trust for the benefit of her son, Roger, the corpus of which consisted of securities having a fair market value of $102,383.58.

On several occasions during 1935, Ernest consulted with Charles Harold Fahy with respect to the creation of a trust for his grandchildren. Fahy was a son-in-law of Ernest and was employed as an account executive by the United States Trust Company in New York. The consultations between Ernest and Fahy were limited to the discussion of the proper securities to be placed in the trust. During their consultations, Fahy noticed that most of the securities which Ernest had selected to be placed in the corpus of the trust had current values which were from 10 to 15 per cent above their par values. He suggested that Ernest substitute other securities for such "high premium" securities in order to eliminate the loss to the remaindermen which would be occasioned by the retirement of such securities. Fahy also suggested that a sinking fund provision be inserted in the trust agreement in order that an amount might be accumulated to compensate for the loss to the remaindermen which would be occasioned by retirement of high premium bonds.

On December 26, 1935, Ernest executed a trust agreement whereby he established a trust and transferred to the United States Trust Company as trustee certain property having a value of $122,379.25 on that date. Under the terms of that agreement the net income of the trust was to be paid to Laura during her life. On her death the corpus of the trust was to be divided into three equal shares to be held in trust with the net income of one such share to be paid to each of Ernest's three children, Laura C., Elizabeth, and Roger, respectively, during such children's lives. Upon the death of any such child, his or her respective share was to be divided among and paid to such child's surviving issue per stirpes. The suggestions made by Fahy with regard to the securities and sinking fund were incorporated in the agreement.

Sometime after August 1935, Fahy asked Laura whether she intended to create any trusts during that year. She replied that she was not going to make any more trusts because she thought she had already done enough for her children.

On December 27, 1935, Laura executed a trust agreement whereby she established a trust and transferred to the United States Trust Company as trustee certain property having a value of $142,304.25 on that date. Under the terms of that agreement the net income of the trust was to be paid to Ernest during his lifetime. Upon his death the corpus of the trust was to be divided into three shares and one such share was to be paid over and transferred absolutely to each of Laura's two daughters, Laura C. and Elizabeth. The third share was to be held in trust and the net income therefrom was to be paid to Laura's son, Roger, during his lifetime and upon his death such share was to be divided among and paid to his surviving issue per stirpes.

Ernest and Laura filed separate Federal gift tax returns for 1935 reporting the respective transfers of property made by each to the respective trusts so established on December 26 and 27, 1935.

The trust agreements executed by decedents in December 1935 were both prepared by Samuel Carter who had acted as an attorney for the decedents for many years. The trust agreements contained identical provisions with respect to many of the powers of the trustee, the treatment of income received by the trust, and the property in which the trust funds might be invested. At the time the trusts were executed by the decedents each was aware that the other was executing his or her trust.

Samuel Carter was not related to either of the decedents. He died prior to the trial of this case.

On December 31, 1951, the date of Laura's death, the value of the corpus of the trust created by Ernest on December 26, 1935, was $129,-776.87. Respondent determined that such amount was includible in Laura's gross estate.

On June 21, 1953, the date of Ernest's death, the value of the corpus of the trust created by Laura on December 27, 1935, was $176,533.71. Respondent determined that such amount was includible in Ernest's gross estate.

The trusts respectively executed by Ernest and Laura on December 26 and 27, 1935, were executed in consideration of each other and each decedent furnished, to the extent of the amount of his trust, the consideration for the trust executed by the other.

OPINION.

This case arises out of respondent's determination that the value, as of Laura's death, of the trust created by Ernest was includible in

Laura's gross estate and that the value, as of Ernest's death, of the trust created by Laura was includible in Ernest's gross estate. Simply stated, respondent's theory is that the trusts were reciprocal, i.e., each nominal settlor created his or her trust in consideration of the creation of a trust by the other. Therefore, respondent maintains, the trust created by Laura on December 27, 1935, should be deemed as having been created by Ernest and the trust created by Ernest on December 26, 1935, should be deemed as having been created by Laura. Accordingly, respondent contends, the values of such trusts are respectively includible in the gross estates of Ernest and Laura under the provisions of section 811(c)(1)(B), I.R.C. 1939,[1] which provides for the inclusion in the decedent's gross estate of any interest in property to the extent the decedent has made a transfer not for adequate consideration and has retained for life a right to income from such property.

The theory of treating each reciprocal or "crossed" trust as if it had been created by the nominal settlor of the other reciprocal trust for estate tax purposes was first approved by the courts in *Allan S. Lehman et al., Executors*, 39 B.T.A. 17, affd. 109 F. 2d 99, certiorari denied 310 U.S. 637. In that case the deceased and his brother executed trust agreements whereby they created identical trusts for the benefit of each other and their respective issue. Each executed his trust in consideration of the other's execution of a reciprocal trust. Under the trust agreements each could withdraw $150,000 from the corpus of the trust created by the other. In affirming the Board of Tax Appeals the Court of Appeals for the Second Circuit held that the $150,000 which the decedent could withdraw from the trust created by his brother was includible in his gross estate under the provisions of section 302, Revenue Act of 1926. The court pointed out that in the circumstances presented the decedent was in substance the settlor of the trust created by his brother since the decedent had, by paying a *quid pro quo* (the execution of a reciprocal trust), furnished the consideration for the creation of such trust. The court

---

[1] SEC. 811. GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

\* \* \* \* \* \* \*

(c) TRANSFERS IN CONTEMPLATION OF, OR TAKING EFFECT AT, DEATH.—

(1) GENERAL RULE.—To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise—

\* \* \* \* \* \* \*

(B) under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (i) the possession or enjoyment of, or the right to the income from, the property, or (ii) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; \* \* \*

reasoned that "transfer by the decedent's brother, having been paid for and brought about by the decedent, was in substance a 'transfer' by the decedent, and the property so transferred formed part of his taxable estate by virtue of section 302(d), to the extent that the decedent had power 'to alter, amend or revoke' the enjoyment of it, that is to say, to the extent of $150,000."

The principle of the *Lehman* case has been approved by the courts in numerous decisions. *Estate of Florence B. Moreno*, 28 T.C. 889, affd. 260 F. 2d 389; *Orvis* v. *Higgins*, 180 F. 2d 537, certiorari denied 340 U.S. 810; *Estate of Hanauer* v. *Commissioner*, 149 F. 2d 857, certiorari denied 326 U.S. 770; *Estate of Cole* v. *Commissioner*, 140 F. 2d 636, the latter two affirming Memorandum Opinions of this Court. Whether the principle is applicable in a given situation is, of course, dependent upon the particular facts presented. *Estate of Louise De-Witt Ruxton*, 20 T.C. 487. In the instant case, each of the trust agreements provided that the income of such trust was to be paid to the nominal settlor of the other trust, for his (or her) life. It is clear, therefore, that if the trusts are reciprocal, section 811(c)(1)(B) is applicable and respondent's determination is proper. Thus the issue resolves itself into a question of fact, namely whether Ernest and Laura each created his (or her) trust in consideration of the creation of the trust by the other.

As stated in *Estate of Louise DeWitt Ruxton, supra,* "The very nature of the issue involved herein is such as to raise doubts in reaching an ultimate conclusion." The question is one of motivations of the two settlors. Their candid testimony might, of course, be the best evidence of their motives in creating the trusts involved. Since they are both dead, we must rely upon other evidence to discern their motivations.

Petitioners contend that neither of the trusts involved was executed in consideration of the other. Briefly stated, their contentions are: (1) That Ernest's purpose in creating his trust was to provide for the security of his grandchildren, and (2) that Laura executed her trust because of the impending increase in Federal gift tax rates. Petitioners maintain that Ernest decided to create his trust in the spring of 1935 while Laura did not decide to create her trust until about December of that year when advised that Federal gift tax rates were going to be increased. Accordingly, petitioners argue, the decisions to create the trusts were arrived at by Ernest and Laura independently and without consideration of the plans of the other.

To demonstrate the alleged lack of consideration on the part of Ernest and Laura, petitioners rely completely on the testimony of Charles Harold Fahy. Fahy is a son-in-law of the decedents and a

legatee under Laura's will; his wife is a legatee of each decedent and a beneficiary of both of the trusts involved. Thus, it is clear that Fahy has an interest in the outcome of this litigation and his testimony must be weighed in that light. Fahy's testimony to a point supports the petitioners' position. During 1935 Fahy was an investment counselor. He testified that commencing in the spring of 1935 Ernest consulted him with regard to setting up a trust for his grandchildren and that on more than one occasion Ernest told him his purpose in creating the trust was to provide for the grandchildren. He testified further that Ernest adopted certain suggestions he made with respect to the trust which favored the remaindermen (grandchildren) to the detriment of the life beneficiaries. Fahy testified that he asked Laura in the fall of 1935 whether she thought of making any more trusts and that she emphatically told him she thought she had already made enough gifts to her children and was not interested in making any more. Later, around the end of November, he testified, she changed her mind when she learned that the Federal gift tax rates were to be increased in 1936, and executed the trust involved. The foregoing, in substance, represents the proof offered by petitioners.

On the other hand, the record discloses a number of facts which, as respondent urges, indicate that the trusts involved were executed in consideration of each other: (1) The fact that the trusts were executed on consecutive days; (2) there was not a large difference in the size of the trusts; (3) the trusts were prepared by the same attorney; (4) the trustees of each trust are identical; (5) the provisions of the trust agreements are identical in many respects; (6) each settlor made the other a life tenant of his trust; and (7) each knew the other was executing his trust.

Petitioners have attempted to explain away the inferences of consideration and agreement between Ernest and Laura to be drawn from these facts but we find their explanation and also the testimony of their witness, Fahy, weak on one of the most significant factors, namely the gifts to each other of life estates in the trusts created. Petitioners dismiss this factor as merely incidental. However, some demonstration that such crossed life estates were not the result of an agreement by the decedents is a fundamental requirement for petitioners' position because such crossing of life estates constitutes the payment of a *quid pro quo* to which the *Lehman* principle applies. Cf. *Orvis* v. *Higgins, supra.* The circumstances, as presented, support the conclusion that the crossing of such life estates was the result of an agreement on the part of the decedents and that the trusts containing such provisions were executed in consideration of each other. Manifestly, the gift of a life estate to Laura was not in fur-

therance of Ernest's alleged purpose of providing for the security of his grandchildren, as stated by Fahy. Nor does it appear that Laura's gift of a life estate to Ernest was in consonance with her pattern of making gifts to her children and grandchildren. The record does not disclose a single instance of a transfer, in trust or otherwise, by either Ernest or Laura to the other prior to those involved. On this background, to say that the execution of trusts containing such provisions by a husband and wife who had been married some 44 years was a result of their independent planning overstrains our credulity. It apparently was too much for Fahy to say also. He studiously refrained from offering an explanation as to the reason for Ernest's and Laura's gifts of life estates to each other, stating that this was "the legal part" of the trusts and that Ernest did not discuss that with him at all.

Thus, Fahy's testimony, when viewed in this light, cannot support a finding that the trusts, when executed, were not executed in consideration of each other. In view of all of the facts and circumstances, we conclude and have found as a fact that the trusts executed by Ernest and Laura on December 26 and 27, 1935, respectively, were executed in consideration of each other and that each decedent furnished, to the extent of the amount of his trust, the consideration for the trust executed by the other.

Petitioners have directed our attention to the cases of *Newberry's Estate* v. *Commissioner*, 201 F. 2d 874 (C.A. 3), reversing 17 T.C. 597, and *McLain* v. *Jarecki*, 232 F. 2d 211 (C.A. 7), which they argue, support their position. Because the question involved in all reciprocal trust cases is factual, little purpose is served by an extensive discussion of the factual background of each case. As we understand the *Newberry* and *McLain* cases, the decisive test for the application of the *Lehman* doctrine is whether the trusts were executed in consideration of each other. Our treatment of the issue here is consistent with this principle and we do not regard our disposition to be contrary to those cases.

In accordance with the foregoing, respondent's determination with respect to this issue is, with the stipulated adjustments, sustained.

In their pleadings, the petitioners have asked that deductions be allowed for "additional administration expenses as may be determined at the conclusion of [these proceedings.]"

Accordingly, credit will be given in the recomputation for deductible expenses incurred by the estates in prosecuting these causes. The parties may, under Rule 50, reach an agreement as to such amounts. If they should fail so to agree, the matter may be disposed of under Rule 51.

*Decisions will be entered under Rule 50.*