Estate of Samuel Goldstein, Deceased, Samuel Rubinton, Hannah Sherman, and Sidney Goldstein, Executors v. Commissioner.
Estate of Samuel Goldstein v. Commissioner
Docket No. 11962.
United States Tax Court
1947 Tax Ct. Memo LEXIS 125; 6 T.C.M. (CCH) 899; T.C.M. (RIA) 47220; July 30, 1947
Meredith M. Daubin, Esq., 1111 Munsey Bldg., Washington, D.C., for the petitioner. Sheldon V. Ekman, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: This case involves a 25 per cent penalty added to estate tax. The total amount of penalty was $11,412.23, of which $9,058.98 had been assessed, leaving a deficiency of $2,353.25 involved herein. The question presented is whether the petitioner has shown reasonable cause for failure to file timely estate tax return. Findings of Fact 1. Samuel Goldstein died on August 13, 1941. Samuel Rubinton, Hannah Sherman and Sidney Goldstein are executors of his estate. 2. Within the statutory period of two months and on November 1, 1941, the executors gave notice to the collector by filing Form 704, reporting a gross estate *126 of $269,000. 3. On November 20, 1942, the Commissioner granted an extension of time of three months from November 13, 1942, within which to file an estate tax return. The Commissioner's letter stated in part: "As it appears that it was impossible to file a reasonably complete return on the due date, an extension of three months from November 13, 1942 is hereby granted. A return as complete as possible should be filed before the expiration of this extension period which is the maximum time that may be granted under the provisions of the law and regulations." 4. The estate tax return, Form 706, consisting of 103 pages, was filed with the collector for the first district of New York on December 14, 1943, after the collector had, on October 28, 1943, written to the petitioner calling attention to the fact that no return had been filed. 5. The estate tax return, after investigation by agents of the Commissioner as to valuations, was accepted as entirely correct as to values and as to the interests owned by the decedent. 6. The preparation of the estate tax return and determination of values involved determination and appraisal of the decedent's interests in 16 parcels of real *127 property and two items of personal property, the total appraised value of such properties being $862,225 and the decedent having varied undivided interests in the different properties so appraised. The appraiser of the real property interests made his affidavit of appraisement on December 8, 1943. The two items of personal property (totaling $775) were appraised on September 13 and 15, 1941, and affidavits of appraisement were made on September 17, 1941, and September 18, 1941, respectively. The appraisals alone did not require all of the two years and four months intervening between decedent's death and the filing of the estate tax return on December 14, 1943. 7. The firm of attorneys who filed the preliminary notice of decedent's death and had charge of preparation of the estate tax return had represented the decedent during his lifetime and has since represented the estate. They had no control over the appraisers. An accurate return could not be filed without the appraisals. The decedent's interests were held by him in various joint ventures with other people. None was in his own name. As to a good many of the properties, there were no complete records showing the extent of decedent's *128 ownership, and complete examinations in the Registrar's office were necessary. In many cases it was necessary to communicate with the decedent's associates and go over the transactions in order to determine his interest. 8. The firm of attorneys who prepared the estate tax return was engaged both in work involving the war effort and other work. About 60 per cent of the firm's time was devoted to non-war matters. There were various changes among attorneys or employees in that office during 1942 and 1943, but out of 29 persons shown on an exhibit listing those persons who left the firm or its employ during the two years, 10 were employed in or after June 1943, and of the 10, five remained until after December 14, 1943, as did one other earlier employed and shown on the list. Eight others out of the 29 had left prior to November 20, 1942. Four persons employed in or after November 1942 (and prior to June 1943) left prior to December 14, 1943, and one attorney employed in February 1942, left in December 1942. Daniel Gutman was employed in May 1942, and took charge of the work in connection with decedent's estate. He was a member of the State Senate and made a campaign for nomination *129 as municipal court judge and left the office when elected, in December 1943, prior to the filing of the estate tax return. In November and December 1942, and generally during the war, the average number of employees in the office was about 12, and about that number remained with the firm during the entire period until after the filing of the estate tax return. The average before the war was 16 or 17. One member of the firm was ill for some time, about 1943 and before the filing of the return. 9. The member of the firm having general charge of the preparation of the return, and who turned the work over to Mr. Gutman under his supervision, was under the impression that "the filing of the estimate was a compliance with the statute." He knew when the return was due, but wanted to file an accurate return not based upon guess work. 10. The estate tax return as filed, reported gross estate of $414,932.43, net estate for basic tax $188,487.25, and net estate for the additional tax $248,487.25. Tax was thereon computed as $36,235.98. The Commissioner determined an estate tax of $45,648.91, or a deficiency of $9,412.98; also a penalty of $11,412.23, of which $9,058.98 was assessed, leaving *130 a deficiency in penalty of $2,353.25. The petition prays for a determination that there is no penalty tax due and for redetermination of the estate tax liability and deficiency. Opinion The sole question presented to us here is whether the petitioner's estate is liable for a penalty because of a late filing of the estate tax return without reasonable cause for delay, within the intendment of section 3612 (d) (1) of the Internal Revenue Code. Section 3612, so far as pertinent, is set forth in the margin. [1] Though the deficiency in penalty is $2,353.35, the amount of $9,058.98 penalty having been assessed, the prayer of the petitioner for redetermination of "penalty tax due," and redetermination of "estate tax liability and deficiency" is regarded as prayer for finding of overpayment of penalty. No issue on the estate tax itself is presented by the briefs, and the petition otherwise places in issue only the penalty. We therefore consider only the penalty, $11,412.23. *131 The respondent does not rely on willful neglect, specifically stating on brief: "Respondent makes no allegation of wilful neglect, although the facts do raise a strong implication of negligence." The petitioner, in substance, argues that the case does not fall under section 291 as to no return ever filed, and that cases thereunder are not applicable, that section 3612 does not require a showing of reasonable cause to the satisfaction of the Commissioner as does section 291, and that section 291 punishes a living taxpayer for failure to file, while section 3612, so far as applied to estates, authorizes the Commissioner to file with a penalty, unless a return is voluntarily filed with showing of reason for delay; that section 821 (providing for filing of estate tax returns) does not set a time for so filing; that there was reasonable cause for the delay, and that the return filed, detailed and voluminous in content, was approved in toto as to decedent's interests. We have examined these arguments and all of the facts presented, and have analyzed the cases presented by both parties. Though the case, it is true, does not fall under section 291, and is not so based in the determination *132 of deficiency, which refers only to section 3612, we find that the test is the same under both statutes: Was there "reasonable cause" for delay in filing the return? It is, we think, immaterial that section 821, providing for filing estate tax returns, itself sets no definite limitation. Neither does section 291, for it requires filing within the limitation set by law or by the Commissioner in pursuance of law; while section 821 requires filing within the limitation set by "regulations made pursuant to law" - and Regulations 105, section 81.63 sets a limit of 15 months. Though section 3612 empowers the Commissioner to execute a return, it applies alike to both income tax returns and estate tax returns. We can not, therefore, detect the difference suggested by the petitioner, as between income tax returns and estate tax returns, as to the test of reasonable cause for delay; and, in our view, cases involving income tax returns, and section 291, apply with equal logic here. We have heretofore in estate tax cases, and on the question of penalty and reasonable cause, relied on income tax cases. Estate of Frederick L. Flinchbaugh, 1 T.C. 653; Estate of Charles Curie, 4 T.C. 1175 (1185). *133 Petitioner suggests that absence of willful neglect (not charged here) is equivalent to reasonable cause. We think the idea without basis, on its face. There could be neglect without willfulness, and by the same token there could be lack of reasonable cause, even though no willful intent was present. We therefore proceed to examine the facts presented in the light of the various cases on "reasonable cause" for delay in filing, enumeration of which is not considered necessary. The idea that the office of the firm of attorneys looking after the estate was so exceedingly busy with war work, as to show reasonable cause for delay is not borne out by the record, for only about 40 per cent of its activities was war work. That there was change of employees and attorneys during the war period is also, upon close examination of the evidence, not shown to be such as to constitute reason for delay in the filing of the return. In this respect, we do not consider of great importance the period up to November 20, 1942, when an extension of time was granted, for assuming that up to then there was reason for delay, the question remains: Was there reasonable cause thereafter? Therefore, of the 29 *134 intances of employees or attorneys leaving the firm, eight leaving prior to November 20, 1942, are not considered of evidential value. Of course, the six who left after the return was filed on December 14, 1943, do not help petitioner's contention, for they were employed when it was filed and for some time earlier. Moreover, of the 29 employees who are shown as leaving the firm, 10 were not employed until in, or after, June 1943 (which was after expiration, about February 13, 1943, of the extension of time granted), so they do not affect the period prior to June 1943, or the question whether the return could reasonably have been filed within the extension. In short, we are not impressed by the showing made as to employees leaving. Rather, in connection therewith, there appears one of the rather obvious reasons for the delay: An attorney, to whom had been assigned the matter of the estate tax return, engaged in a campaign for nomination as judge, and, when elected, left the firm in December 1943, shortly before the filing of the estate tax return. To say the least, this tends strongly to negative a showing of reasonable cause, unless we are to consider the attorney's campaign as sound *135 reason for delay. We can not do so, can not regard attention to such personal matters as valid reason for not attending to the return. The campaign was voluntary action, and so far as preferred to filing the return, in our view, was not reasonable cause for delay. The fact of illness, about 1943, of the attorney in general charge of the estate tax return, for an indefinite period, is not pressed, or shown to be sufficient ground for delay. He had earlier turned the matter over to Gutman. Nor do we consider a reasonable cause the fact of a voluminous and detailed return - 103 pages - when filed. The time granted by the regulation - 15 months - plus the three-month extension, appears a reasonable time for preparation of such a report, even though it involved ascertainment and appraisement of interests, both real and by way of mortgages in a considerable number of tracts of property. In fact, it is not definitely shown that the appraisements, or many, or most of them, were not made some time, possibly a long time, before the filing of the return. The affidavit of the appraiser is dated December 8, 1943, six days before the filing, but when were the appraisals made? Referred to the *136 affidavit showing the date December 8, 1943, and asked to "state the date that was completed, that is shown thereon," a witness said: "Completed on the 8th day of December, 1943," but this shows only when the affidavit was completed, and is not proof as to when the appraisals were made; and the same is true of a leading question: "The first group of appraisals of mortgages, notes and real estate was made or completed on December 8, 1943?" and the answer: "That is correct." Most of them may have been completed long before that. Date of completion is not, in fact, greatly significant. The question is: When could the return reasonably have been filed? Though the attorney in general charge of the estate tax return testified that he had no control "over the preparation of this appraisal," we can not regard this as proving that he could not have required and obtained the appraisals to be completed earlier; and the required amount of investigation into the decedent's interests is seen as no justification for not filing within the extended time, in the light of language of the letter of extension for the filing of a return "as complete as possible," and its reference to a "reasonably complete *137 return," both in the letter of extension and Regulations 105, section 81.70, which requires: "Before the expiration of the extension period granted a return as complete as possible must be filed." It also provides for later furnishing of "supplemental information" which might result in a tax different from the amount shown upon the return filed. Clearly, in our view, the petitioner was under a duty of filing, within the extended time (which was by the extension letter specifically shown to be the only extension possible) a return showing what could then be shown; and in the light of such rather obviously fair requirement, further delay, because of a desire to file a more accurate return than then possible, appears to be without reasonable cause. Only "a return as complete as possible" was required within the time limit. Though not amendable, it could be supplemented by further information. It is difficult indeed to find reasonable cause for noncompliance with the letter of extension and regulation. In our opinion, the essential reason appearing why the return was not earlier filed was expressed in the opinion of the attorney in general charge of the matter: "I was under the impression *138 that the filing of the estimate was a compliance with the statute." Reference to "estimate" can, of course, only be to the notice of death, filed November 1, 1941, since nothing else appears filed prior to the estate tax return. Such erroneous impression is, of course, not reasonable cause for delay. On all of the evidence, we conclude that the petitioner has failed to show reasonable cause, within the intendment of section 3612 of the Internal Revenue Code, for delay in filing the estate tax return, and therefore has failed to show error on the part of the Commissioner in imposition of the penalty. Because of lack of proof up to the time of trial as to credit against tax on account of state estate, inheritance, legacy or succession taxes, Decision will be entered under Rule 50. Footnotes
1. SEC. 3612. RETURNS EXECUTED BY COMMISSIONER OR COLLECTOR. (a) Authority of Collector. - If any person fails to make and file a return or list at the time prescribed by law or by regulation made under authority of law, or makes, willfully or otherwise, a false or fraudulent return or list, the collector or deputy collector shall make the return or list from his own knowledge and from such information as he can obtain through testimony or otherwise. (b) Authority of Commissioner. - In any such case the Commissioner may, from his own knowledge and from such information as he can obtain through testimony or otherwise - (1) To make return. - Make a return or, (2) To amend collector's return. - Amend any return made by a collector or deputy collector. * * *
(d) Additions to Tax. - (1) Failure to file return. - In case of any failure to make and file a return or list within the time prescribed by law, or prescribed by the Commissioner or the collector in pursuance of law, the Commissioner shall add to the tax 25 per centum of its amount, except that when a return is filed after such time and it is shown that the failure to file it was due to a reasonable cause and not to willful neglect, no such addition shall be made to the tax: Provided, That in the case of a failure to make and file a return required by law, within the time prescribed by law or prescribed by the Commissioner in pursuance of law, if the last date so prescribed for filing the return is after August 30, 1935, then there shall be added to the tax, in lieu of such 25 per centum: 5 per centum if the failure is for not more than 30 days, with an additional 5 per centum for each additional 30 days or fraction thereof during which failure continues, not to exceed 25 per centum in the aggregate.↩