Estate of Robert M. McCulloch, Deceased, Hugh McC. Rossire, Executor v. Commissioner.
Estate of Robert M. McCulloch v. Commissioner
Docket No. 11039.
United States Tax Court
1949 Tax Ct. Memo LEXIS 266; 8 T.C.M. (CCH) 110; February 11, 1949
John B. Surr, Esq., for the petitioner. E. A. Tonjes, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Respondent determined a deficiency in estate tax of $30,050.45, against the estate of Robert M. McCulloch, hereinafter referred to as decedent. The issue is whether a transfer in trust by decedent in 1935 was in contemplation of death; or was intended to take effect in possession or enjoyment at or after his death, because of the reservation by him of a contingent life interest in the income of the trust. Some of the facts have been stipulated. Findings of Fact The stipulated facts are hereby found accordingly. Decedent was born in New York on August 10, 1861, and died testate, a domiciliary *267 of Redlands, California, on June 18, 1944. The estate tax return was filed with the collector for the sixth district of California. Hugh McC. Rossire, decedent's nephew, is executor of the estate. In 1922, decedent married Kathreen Sanborn, who was born on March 18, 1867, and survived decedent. It was the first marriage for each, although at that time decedent had two adopted daughters, Alicia and Maria, whom he adopted while he resided in Cuba, managing his family's large sugar plantation. The proceeds of the sale of the plantation in 1920, although divided among decedent, a brother, and two sisters, netted decedent a sum running into hundreds of thousands of dollars. In December, 1935, while he was domiciled in New York decedent transferred irrevocably in trust certain securities of a value then in excess of $127,622, approximately one-third of his fortune. The securities were to be held and disposed of by trustees, who were decedent and a New York bank, as follows: "To pay the net income to KATHREEN SANBORN McCULLOCH, wife of the Grantor, [decedent] as long as she shall live, and if the Grantor shall survive her then to the Grantor as long as he shall live, and upon *268 the death of the survivor of the Grantor and said Kathreen Sanborn McCulloch, to distribute the principal among my nephews and nieces in the following proportions; - H. MARGARET ARENT
two-fifths;
CHARLES H. ARENT
one-fifth;
HUGH McC. ROSSIRE
one-fifth;
HENRY S. ROSSIRE
one-fifth; and if any of said nephews and nieces shall have died, then the share of that one so having died shall be divided among the distributees of that one so having died." Decedent died, leaving a will dated June 27, 1941, and a codicil dated January 20, 1943. Under the terms of the will and codicil, decedent bequeathed to his wife his interest in certain real property, the sum of $25,000, all jewelry and other personal effects, and one-half of the residue of his estate. The remaining one-half was bequeathed to his adopted daughter, Alicia, who during administration was to receive the income of the residue, not exceeding $150 per month. Decedent had for many years sent this amount to the mother of his adopted daughters in Cuba for their support, and also assisted financially in the education of one of Alicia's children. The cause of decedent's death, as recited in the death certificate, *269 was cancer of the lung. There is also noted that decedent suffered from chronic myocarditis. At least from 1930 until decedent's death, Dr. Hilliard of Redlands was his personal physician. He was not produced as a witness. At the time of the transfer in trust in 1935, decedent's state of health appeared to his relatives to be good, and it was not until about two years before his death that those about him saw visible evidence of his failing health. He traveled extensively, both in the United States and abroad, played golf with some regularity until 1936, and was a person of apparent optimism and joviality. He was not given to complaining of illness or pain. One reason for decedent's creation of the trust was the urging of his wife that she recover some semblance of financial selfsufficiency such as she had previously enjoyed, and also to allay her jealousy of decedent's adopted daughter, whom decedent assisted financially. Prior to her marriage, decedent's wife had an independent income from a share of her mother's estate, released to her by her brother. Upon her marriage, she returned this to her brother, somewhat diminished as a result of losses on her investments. There was *270 a continual decrease in her income prior to the creation of the trust. Her taxable net income in 1927 and 1930 was $1,052 for each year. In 1934, it had shrunk to $469.50, and in 1935, to $350. The distributable net income of the trust from 1936 to 1940 averaged about $6,000 per year. At the time of decedent's death on June 18, 1944, the fair market value of the assets of the trust was $112,903.08. At the time, the fair market value of the life interest of decedent's wife in the trust and its assets was $22,332.23, and the fair market value of the remainder over, above and after the interest of decedent's wife, was $90,570.85. In his notice of deficiency respondent stated: "The value of the * * * property, transferred by the decedent in his lifetime, is included in the gross estate, it being determined that such transfer was made in contemplation of death and the transfer was intended to take effect in possession and enjoyment at decedent's death, and as the decedent reserved the power to alter, amend, revoke, or terminate the trust, it is subject to inclusion in the gross estate under the provisions of Section 811(c)(d) of the Internal Revenue Code * *271 * *" Opinion Had May v. Heiner, 281 U.S. 238, been decided originally in favor of the Treasury, it would have required a parallel disposition of the present proceeding, for the facts are indistinguishable. Petitioner in effect so concedes when he relies upon that case for the proposition that "a transfer by one spouse in trust, with income to the other spouse for life, and then to the grantor spouse if living, for life, with remainder to children, is not a transfer intended to take effect in possession or enjoyment at or after death." The Supreme Court's direct reversal of May v. Heiner in Commissioner v. Estate of Church, 335 U.S. 632 (January 17, 1949) has the same effect on this proceeding as though that case had originally been decided the other way. We conclude that the remainder after deducting the value of the wife's life interest is subject to inclusion in the gross estate; and that that is so without the necessity of exploring the intricacies of Estate of Charles Curie, 4 T.C. 1175, and Estate of Charles Nathan, 6 T.C. 604, reversed (C.C.A., 7th Cir.), 159 Fed. (2d), certiorari denied, 334 U.S. 843, as *272 applied to the facts of this proceeding. Respondent seeks to reach the value of the life estate transferred to the wife only in the event that there was here a transfer in contemplation of death. That portion of the transfer, however, which represents the interest given to the wife for life is precisely the aspect of the transaction as to which it would be impossible to connect decedent's motives with testamentary purposes. Assuming that much of the transfer to be severable from the rest, and to be excludible from the estate as attributable to motives connected with life rather than death, Estate of Paul Garrett, 8 T.C. 492, it becomes unnecessary to determine whether the balance of the transfer was or was not in contemplation of death since we have already determined that it is nevertheless includible in the gross estate on other grounds. Decision will be entered under Rule 50.