ESTATE OF CHARLES CURIE, DECEASED, THE SECOND NATIONAL BANK OF PATERSON, AS EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 2142. Promulgated April 25, 1945.

*Frederick M. Schlater*, *Esq.*, and *William H. Welsh*, *Esq.*, for the petitioner.

*Walt Mandry*, *Esq.*, for the respondent.

1176

1178

1180

OPINION.

ARUNDELL, *Judge*: The first question presented for decision involves the includibility in the decedent's gross estate, under the provisions of section 302 (c) of the Revenue Act of 1926 as amended, of the value of the corpus of a trust created by him in 1925. By the terms of the trust instrument the income was to be paid to decedent during his lifetime and after his death to his appointees, as long as his wife should live. Upon the death of his wife the income was to be paid to or for the benefit of-the three children of decedent until they should severally reach the age of 30, whereupon the corpus was to be distributed to them absolutely. In no event were the children to receive the corpus or the income until the death of the wife. Paragraphs 7 and 10 provide in substance that if the children should die before reaching 30 or before the death of the wife, the corpus should revert to decedent or his appointees.

It is clear that nothing is to be included in the estate of the decedent by reason of the retention of the income during his life, since the trust was created prior to the Joint Resolution of March 3, 1931. *Hassett* v. *Welch*, 303 U. S. 303; *May* v. *Heiner*, 281 U. S. 283; *Estate of Edward E. Bradley*, 1 T. C. 518; affd., 140 Fed. (2d) 87. Respondent has determined, however, that the corpus is includible as a transfer intended to take effect in possession or enjoyment at or after death, within the meaning of section 302 (c) of the Revenue Act of 1926 as amended.

Petitioner argues that the transfer was not one intended to take effect in possession or enjoyment at or after death, because nothing was given contingently upon decedent's death and because the rights of all takers were the same, regardless of the death of decedent. It is apparent, however, that the decedent retained a string or a contingent power of appointment over the trust corpus. The remainder to the children was not absolute until they reached the age of 30 years and survived their mother. In the event none of the children were able to take, the corpus was to be paid over to petitioner if he

was then alive or to his appointee under his will if he was then deceased. Hence, until the time of decedent's death or some undeterminable time thereafter it was uncertain whether the property would pass as provided in the trust instrument, or whether it would be distributed under the power of appointment. The retention of such a string subjects the property to estate tax liability. The principles enunciated in *Klein* v. *United States*, 283 U. S. 231; *Helvering* v. *Hallock*, 309 U. S. 106; and more recently the construction placed thereon in *Fidelity-Philadelphia Trust Co.* (*Stinson Estate*) v. *Rothensies*, 324 U. S. 108, require us to approve the Commissioner's determination.

The second trust, created in 1928, presents a different problem. Respondent determined that the entire corpus of that trust was includible in decedent's estate, but has now modified his position, tacitly conceding that the corpus as originally constituted is not includible in decedent's estate, but contending that the value at the date of death of the additional securities transferred to the trust in 1935 is includible under section 302 (c) of the 1926 Act, as amended by section 803 (a) of the Revenue Act of 1932. The argument is that the transfer of additional securities was a transfer under which decedent "has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property * * *." The terms of the instrument to which the transfer was subject provided that during the life of Mrs. Curie the income in excess of $12,000 per year should be paid to decedent and after her death, if decedent survived her, all of the income should be paid to him as long as he should live. Upon the death of survivor of them the income was to be paid to his lawful issue until the youngest should reach the age of 21, at which time the corpus was to be distributed to the then living issue per stirpes.

Petitioner argues, first, that the transfer is not controlled by section 803 (a) of the Revenue Act of 1932, effectuating the Joint Resolution of March 3, 1931, because this trust was established prior to March 3, 1931, and the transfer of the additional securities in 1935 was not more than the fulfillment of an obligation undertaken in 1928.

The statute, however, embraces all transfers of the category specified, made after its effective date. Regardless of the circumstances under which the transfer was made, if it is of the category against which the amendment was directed, the value at the date of decedent's death must be included in his estate, inasmuch as the transfer is the determinative event, by the plain words of the statute. Under basically similar circumstances the same conclusion was reached in *City Bank Farmers Trust Co.* v. *Hoey*, 101 Fed. (2d) 9. In that case the contention was made that certain gratuitous payments actually made

subsequent to the effective date of the Gift Tax Act of 1932 were not taxable under that act because made pursuant to an obligation existing prior to the effective date. The Circuit Court of Appeals for the Second Circuit held that "The prior creation of rights to have the transfers made could not change the fact of the transfers or the time of the transfers," and that the transfers, regardless of the preexisting obligation, were taxable under the Revenue Act of 1932. So here, despite the fact that the transfer of additional securities in 1935 was made pursuant to an obligation existing in 1928, the actual transfer occurred after the effective date of section 803 (a) of the Revenue Act of 1932 and of the Joint Resolution of March 3, 1931, and its taxability must be determined in the light of those provisions.

The question is thus narrowed to whether the value of the additional securities is includible in decedent's estate by reason of his limited and contingent right to the income of the trust. That right was in reality twofold: (1) A right to receive all income in excess of $12,-000 while his wife lived, and (2) a contingent right to the entire income of the trust in case he should survive his wife. As to the first right, the income of the trust has never been as great as $12,000 per year and decedent or his estate has never received anything under that reservation.[1] The principal controversy centers around the right to receive all the income in case decedent should have survived his wife.

The purposes sought to be accomplished by the enactment of section 803 (a) of the Revenue Act of 1932, as set forth in the Report of the Committee on Ways and Means, 72d Cong., 1st sess., pp. 46, 47 (C. B. 1939-1 (Part 2), pp. 490-1), were as follows:[2]

The purpose of this amendment to section 302 (c) of the Revenue Act of 1926 is to clarify in certain respects the amendments made to that section by the joint resolution of March 3, 1931, which were adopted to render taxable a transfer under which the decedent reserved the income for his life. The joint resolution was designed to avoid the effect of decisions of the Supreme Court holding such a transfer not taxable if irrevocable and not made in contemplation of death. Certain new matter has also been added, which is without retroactive effect.

The changes are:

(1) The insertion of the words "or for any period not ascertainable without reference to his death," is to reach, for example, a transfer where decedent reserved to himself semiannual payments of the income of a trust which he had established, but with the provision that no part of the trust income between the last semiannual payment to him and his death should be paid to him or his estate, or where he reserves the income, not necessarily for the remainder of his life, but for a period in the ascertainment of which the date of his death was a necessary element.

---

[1] T. D. 4868 (C. B. 1938-2, pp. 355-6)—

If such retention or reservation is of a part only of the use, possession, income, or other enjoyment of the property, then only a corresponding proportion of the value of the property should be included in determining the value of the gross estate.

[2] Id. Finance Committee Report, 72d Cong., 1st sess., pp. 49, 50.

(2) The insertion of the words "or for any period which does not in fact end before his death," which is to reach, for example, a transfer where decedent, 70 years old, reserves the income for an extended term of years and dies during the term, *or where he is to have the income from and after the death of another person until his own death, and such other person predeceases him.* This is a clarifying change and does not represent new matter. [Emphasis added.]

(3) The insertion of the words "the right to the income" in place of the words "the income" is designed to reach a case where decedent had the right to the income, though he did not actually receive it. This is also a clarifying change.

In 1934, under Regulations 80, article 15, the Treasury ruled that, where a grantor reserves a life estate to take effect upon the death of a prior life tenant and thereafter predeceases the life tenant, the corpus of the trust is not includible in his gross estate. E. T. 5, C. B. XIII-2, p. 369. That ruling, after setting forth the above quoted excerpt from the committee reports, concluded as follows:

In (2), above, the intention is clearly expressed that one of the objects sought to be accomplished was to reach a transfer "where he [the transferor] is to have the income from and after the death of another person until his own death, and such other person predeceases him." In other words, if the transferor was at the date of his death in the actual enjoyment of the income of the trust, the transfer should be subjected to tax; and, where the transferor's contingent right to the trust income was obliterated by his death prior to that of the life tenant, the transfer is not taxable.

Since A predeceased his wife, it is held, under the construction of section 302 (c) indicated in the above-quoted provisions of the report of the Committee on Finance of the Senate with respect to the amendment of that section by section 803 (a) of the Revenue Act of 1932, that the value of the property transferred in trust by A may not properly be included in his gross estate.

In 1937 Regulations 80, article 18, was amended to read as follows:

ART. 18. *Transfers with possession or enjoyment retained.*—(a) *Transfers included.*—The statutory phrase, "a transfer * * * intended to take effect in possession or enjoyment at or after his death," includes a transfer, whether in trust or otherwise, made subject to the reservation or retention by the decedent of the use, or the possession, or the rents or other income or enjoyment of the transferred property, or any part thereof, for his life, or for a period not ascertainable without reference to his death, or for such a period as to evidence his intention that it should extend at least for the duration of his life; *including also the reservation or retention of the use, possession, rents, or other income the actual enjoyment of which, by the decedent, was to be postponed until the termination of a transferred precedent interest or estate.* (See article 15.) [Emphasis added.]

If for any such period the use, possession, rents, or other income (in whole or in part) were to be disposed of in discharge of a legal obligation of the decedent or otherwise for his pecuniary benefit, then to that extent the use, possession, rents or other income will be treated as having been reserved to or retained by the decedent.

Respondent's position is based upon this regulation. However, the opinion of the Commissioner was otherwise in 1936, at which time he adhered to the view which had been expressed in E. T. 5, *supra.* The history of the legislation, we think, supports the earlier view of

the Commissioner.   The Supreme Court, in *May* v. *Heiner, supra,* and in later cases following that decision, held that a transfer was not one "intended to take effect in possession or enjoyment at or after death" simply by reason of the fact that the income from the property transferred was retained for his life by the grantor.   By the Joint Resolution of March 3, 1931, Congress sought to overcome the future effect of those decisions by adding a new provision designed to tax transfers where the grantor had retained for his life, or for any period not ascertainable without reference to his death, (1) the possession or enjoyment of, or the income from, the property.   The 1932 Act further amended the provisions by adding the phrase "or for any period which does not in fact end before his death," and adding "or the right to the income from, the property."

It is obvious that the decedent did not retain the income for his life.   At the creation of the trust his wife came into the enjoyment of the income for her life.   Nor do we think the phrase "for a period not ascertainable without reference to his death" is applicable.   Decedent's death merely cut off the possibility of his ever coming into the possession or enjoyment or the right to the income from the property and to apply this phrase to the case at hand would render it meaningless.   The obvious purpose of this language was to tax transfers where decedent actually came into the enjoyment of the income, not for his life, but for a period, in the determination of which the date of his death was a necessary element, for example, where the grantor is to receive the income annually but with the provision that none of the income between the last annual payment and his death is to be received by him or his estate.   It seems clear that the case at hand would fall within the meaning of the phrase "or for any period which does not in fact end before his death," had decedent ever come into the enjoyment of or the right to the income during his lifetime. Since the reservation of the possibility of coming into a life estate does not amount to the retained estate contemplated by the statute, we are of the opinion that the petitioner should prevail.

The final question involves the correctness of the penalty determined by respondent for delinquency in filing the return.   Section 3176 of the Revised Statutes, as amended by section 1103 of the Revenue Act of 1926, imposes a 25 percent penalty in case of failure to file a return within the time prescribed by law or by respondent or the collector in pursuance of law, unless it is shown that such failure was due to a reasonable cause and not to willful neglect.   Section 406 of the Revenue Act of 1935 provides that the penalty shall be 5 percent for each 30 days of delinquency, not exceeding 25 percent in the aggregate. Article 63 of Regulations 80 provides that the return must be filed within 15 months after decedent's death.   Section 304 of the Revenue Act of 1926 provides in part as follows:

(b) * * * If the executor is unable to make a complete return as to any part of the gross estate of the decedent, he shall include in his return a description of such part and the name of every person holding a legal or beneficial interest therein, and upon notice from the collector such person shall in like manner make a return as to such part of the gross estate.

Article 64 of Regulations 80 provides in part as follows:

ART. 64. *Persons liable for return.*—The statute provides that the duly qualified executor or administrator shall file the return. * * * If, in any case, the executor is unable to make a complete return as to any part of the gross estate, he is required to give all the information he has as to such property, including a full description, and the name of every person holding a legal or beneficial interest in the property. * * *

The facts may be summarized as follows: The return was due October 15, 1937. The executor, a national banking institution, knew the return was due October 15, 1937. On December 11, 1937, the executor wrote to its attorney, stating that it believed the time for filing had expired, and suggested that "an application for an extension of time should be made provided you have not already done so." Shortly thereafter the attorneys requested an extension and by letter dated January 10, 1938, the request was denied, with the suggestion that a return as nearly complete and accurate as possible should be filed without further delay. This letter was transmitted to the executor, but no action was taken. In June and July 1938 the attorneys again wrote for an extension, but were advised again that an extension was impossible, but that if a return was filed within 30 days consideration would be given to an affidavit explaining the delinquency. Still no action was taken. It was not until August 15, 1940, almost two and one-half years after being advised by the Commissioner to file a return as complete as possible without further delay, that the executor finally filed the return.

Petitioner advances several grounds as constituting reasonable cause for this extended delinquency. The first is that it entrusted the preparation and filing of returns to its attorneys. The burden of filing returns, however, can not be avoided by placing the duty upon an agent. *Eagle Piece Dye Works,* 10 B. T. A. 1360. Secondly, it argues that it was advised by its attorneys that no return should be filed until a complete and accurate one was possible. Petitioner, however, was a national banking institution, accustomed to filing returns for estates administered by it, and must be presumed to have been acquainted with the requirements of the law. Furthermore, on the evidence it is questionable whether such advice was received prior to the due date of the return, or whether any advice at all was sought before the due date. The letter of December 11, 1937, would suggest the latter conclusion.

A third argument is that the assets of the estate were not reduced to physical possession until February 1938, by reason of litigation

over the accounting of decedent's committee. When asked if any attempt had been made to learn from the committee of the assets it had belonging to decedent, the trust officer of the executor in charge of this estate replied:

Q. But did you ask Mr. Scully [one of the decedent's committee], in 1937, or any other time prior to February when he turned the assets over to you, what the assets were that they had that belonged to the incompetent?

A. I don't know—we talked about them generally—I don't know if I put the question to him point-blank. We were to get the securities—about a year prior to when we did receive them.

Q. I didn't get that last statement.

A. I don't recall asking him exactly what securities he had there because we expected to get the securities about a year before we actually did.

Moreover, the whole question is colored by the protracted delay in filing the return. It was admitted that full information about the ٬assets was in the possession of the executor and its attorneys by August 1938. No return was filed until two years later, despite the warnings of the respondent in January and June of 1938 that a return should be filed without further delay if the penalty was to be avoided. All of these circumstances combine to show clearly a lack of reasonable cause for failure to file, if not willful neglect to file. On this point, therefore, the determination of the Commissioner is sustained.

Reviewed by the Court.

*Decision will be entered under Rule 50.*