ESTATE OF DEBE W. HUBBARD, THE MERCHANTS NATIONAL BANK OF MOBILE, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 52124. Filed April 27, 1956.

*C. A. L. Johnstone, Jr., Esq.,* for the petitioner.
*W. Preston White, Jr., Esq.,* for the respondent.

186

OPINION.

OPPER, *Judge:* Both factually and legally this proceeding arises against a complicated background. Decedent did not create the original trust out of which the deficiency arises. It was imposed, presumably with her consent, by the probate court upon property left by her deceased husband. The husband's former wife was life beneficiary to the extent of $9,000 a year. At that point, the present decedent owned everything else.[1] Had she died without any further transfer, the value of her interest in the trust would obviously have been includible in decedent's estate when she died. Sec. 811 (a), I. R. C. 1939; *Security-First Nat. Bank of Los Angeles, Executor,* 35 B. T. A. 815.

Between March 3, 1931, and June 7, 1932, however, decedent took a further step. She transferred to another trust her entire beneficial interest in the trust which had already been established for the life of Emma, the former wife. It is this transfer which respondent seeks to include in decedent's estate under section 811 (c).

Petitioner then owned—and retained after the transfer into trust— two income interests. She had an immediate right to all income over $9,000 a year and a reversionary estate for her life in all the income after Emma's death. One interest was uncertain and the other postponed, but both were capable of valuation; and they have been valued. We take it that when the parties stipulate that, if any amount is to be included in decedent's estate on account of the transfer it is $132,461.86, they are agreeing on what that value is.

The significance of the date when this transfer took place is that it occurred between the passage of the Joint Resolution,[2] which supposedly repealed[3] the effect of cases relying upon *May* v. *Heiner,* 281 U. S. 238, and the more extensively worded amendments passed the following year. By the terms of the Technical Changes Act,[4] the transfer is taxable only if under the Joint Resolution, and without reference to the subsequent amendments, the transfer would have been taxable.

The conclusion that a reversionary life estate was not encompassed in the phrase "intended to take effect * * * at * * * death," *May* v. *Heiner, supra,* was struck down by the *Church* case,[5] which in turn

---

[1] Decedent referred to her rights as follows: "WHEREAS, under the said arrangement the said Debe Hubbard Vogeler now is the ultimate owner and sole beneficiary of the said trust fund both as to income and corpus, subject only to the prior right of the said Emma Price Williams Hubbard to receive therefrom $750.00 per month so long as she survives * * *" (Exh. 18.)

[2] Pub. Res. No. 131, 71st Cong., 3d Sess. (1931), ch. 454, 46 Stat. 1516.

[3] 74 Cong. Rec. 7078 *et seq.,* 7198 *et seq.* (Mar. 3, 1931).

[4] Pub. L. No. 378, 81st Cong., 1st Sess. (1949), ch. 720, 63 Stat. 891.

[5] *Commissioner* v. *Church's Estate,* 335 U. S. 632.

was overruled in this respect by the Technical Changes Act. But the 1926 Act was not the only legislation applicable to this transfer. By the time the trust was set up there were also included under the Joint Resolution transfers with reservation for life or for any period not ending before death of the possession, enjoyment, or income of the property. At first blush, decedent would appear to have accomplished just that.

The language of the Joint Resolution included in a decedent's estate transferred property as to which

the transferor has retained for his life or any period not ending before his death (1) the possession or enjoyment of, or the income from, the property * * *

By the 1932 amendments, this language was changed to read as follows, the additional words being underscored:

under which he has retained for his life or *for any period not ascertainable without reference to his death or* for any period which does not *in fact* end before his death (1) the possession or enjoyment of, or *the right to* the income from, the property * * * [Rev. Act 1932, sec. 803.]

If the only retained income interest had been the reversionary life estate, it might be that the property would not be includible. Cases [6] reaching a contrary result as to transfers after June 7, 1932, rely partly upon the language "for any period not ascertainable without reference to his death" which was added by the 1932 amendments and explicitly termed a change of substance in the Committee Report. This, as petitioner points out, is not as astonishing as might first appear. There is no evidence that the Joint Resolution was directed against the case of *May* v. *Heiner, supra,* and its immediate occasion was the decision of three cases [7] by the Supreme Court dealing not with reversionary but with immediate life estates. Cf. Bittker, "The Church and Spiegel Cases," 58 Yale L. J. 825, 829, 869 (1949). In fact, in one of the opinions to which we have referred where the added language is relied upon, the court suggests:

As, however, Congress deemed the addition of this second phrase a substantial change, it may well be that it was intended to eradicate any part of the *May* v. *Heiner* interpretation which the Joint Resolution of 1931 * * * may conceivably have left intact. [*Marks* v. *Higgins,* (C. A. 2) 213 F. 2d 884.]

Unlike *Estate of Herman Hohensee, Sr.,* 25 T. C. 1258, the retroactive provisions of the Technical Changes Act do not by express congressional language include this interest. And it is equally unnecessary to pass here upon the still unresolved question whether it was intended, in the Technical Changes Act, to make any real

---

[6] *Commissioner* v. *Nathan's Estate,* (C. A. 7) 159 F. 2d 546, certiorari denied 334 U. S. 843, reversing 6 T. C. 604; *Marks* v. *Higgins,* (C. A. 2) 213 F. 2d 884.
[7] *Burnet* v. *Northern Trust Co.,* 283 U. S. 782; *Morsman* v. *Burnet,* 283 U. S. 783; *McCormick* v. *Burnet,* 283 U. S. 784.

distinction between transfers taking place before and after June 7, 1932. See *Estate of Myron Selznick*, 15 T. C. 716, 726, affirmed per curiam (C. A. 9) 195 F. 2d 735.

However that may be, this decedent did not retain only the reversionary life estate. As we have said, she retained all that she ever had as long as she lived. Only at her death did her interests terminate. These interests included the right each year during her life to receive the excess income over $9,000 a year. Since the corpus of the trust was $200,000, this interest could not have been without some value. What that value was,[8] how it is to be arrived at, and how it compares with the value of the reversionary life estate, we need not consider. The parties, as we have said, have agreed upon the valuation of all of decedent's combined interests. Since, in addition to the reversionary life estate, decedent retained a valuable right to excess income for a period which did not end before her death, we think the stipulated value of the transfer is directly encompassed within the language of the Joint Resolution and is to be included in the gross estate.

Petitioner appears to labor under the impression that the amendment to section 811 (c) (2) made by section 7 of the Technical Changes Act[9] is somehow effective to eliminate this situation from includible transfers. That provision required a reversionary interest to be worth at least 5 per cent of the transferred property for it to be subject to inclusion. To that rule the section makes an explicit exception where the reversionary interest is itself a life estate. It obviously was not intended to eliminate reversionary life estates in their entirety. And in any event there is no showing here that the interest retained by decedent did not amount to more than 5 per cent and the available arithmetic indicates the contrary.

[8] $9,000 represented an income of only 4½ per cent on the corpus.

[9] SEC. 7. TRANSFERS TAKING EFFECT AT DEATH.

(a) Section 811 (c) of the Internal Revenue Code (relating to transfers in contemplation of or taking effect at death) is hereby amended to read as follows:

"(c) TRANSFERS IN CONTEMPLATION OF, OR TAKING EFFECT AT DEATH.—

"(1) GENERAL RULE.—To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise—

\* \* \* \* \* \*

"(C) intended to take effect in possession or enjoyment at or after his death.

"(2) TRANSFERS TAKING EFFECT AT DEATH—TRANSFERS PRIOR TO OCTOBER 8, 1949.— An interest in property of which the decedent made a transfer, on or before October 7, 1949, intended to take effect in possession or enjoyment at or after his death shall not be included in his gross estate under paragraph (1) (C) of this subsection unless the decedent has retained a reversionary interest in the property, arising by the express terms of the instrument of transfer and not by operation of law, and the value of such reversionary interest immediately before the death of the decedent exceeds 5 per centum of the value of such property. For the purposes *of this paragraph*, the term 'reversionary interest' includes a possibility that property transferred by the decedent (A) may return to him or his estate, or (B) may be subject to a power of disposition by him, but such term does not include a possibility that the income alone from such property may return to him or become subject to a power of disposition by him. \* \* \*" [Emphasis added.]

The present result is directly contrary to that reached in *Estate of Charles Curie*, 4 T. C. 1175, where the same types of interests were retained by decedent. Inclusion on account of the right to excess income was denied because of a supposed ruling in T. D. 4868, 1938–2 C. B. 355, 356. We think the *Curie* case misconstrued the scope of that ruling [10] which by its terms applies to parts only and not to excess amounts, the value of which, while perhaps uncertain, cannot nevertheless be entirely eliminated. To the extent that it is in conflict with the present conclusion, the *Curie* case will no longer be followed. On this issue the deficiency will be sustained.

The second issue involves a part of the executor's commissions paid and allowed by the local probate court. Respondent concedes "that the executor's fees paid * * * representing the application of the rate prescribed by Alabama law for executor's fees to the receipts and disbursements of property owned by the decedent at death and included in the gross estate, are properly deductible. This amount is $21,915.51." The balance of the executor's fees, or $4,439.66, is disallowed because computed upon income received by the estate after decedent's death and upon the distribution of that income.

In *George W. Oldham, et al, Executors*, 36 B. T. A. 523, where the question involved was the deductibility of executor's fees from income tax, we said at page 533:

the services rendered * * * were the usual and ordinary duties performed by executors in preparing an estate for distribution. * * *

at page 529:

Ordinarily the fees and commissions of executors * * * and other representatives of estates are regarded as administration expenses and are applied against the gross estate in determining the estate tax. * * *

and at page 530:

If the process of administration goes forward in normal course, and distribution and settlement are completed within a usual and reasonable time, the expenses of the representatives of the estate are regarded as administration expenses. * * *

In the present case the amount of the executor's commissions was established by the probate court. The computation of the commissions was made in accordance with Alabama statutes. Ala. Code 1940, tit. 61, secs. 377 and 378. It is clear in this case that the estate or the executor for the estate was not engaged in a trade or business, and that the activities of the executor were directed toward the distribution of estate assets. The administration of the estate has continued for an extended length of time, but considering the litigation,

---

[10] If such retention or reservation is of a part only of the use, possession, income, or other enjoyment of the property, then only a corresponding proportion of the value of the property should be included in determining the value of the gross estate.

the problems involved, and the sums to be distributed, the length of time is not excessive. On this second issue petitioner is sustained.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

JOHNSON, *J.*, dissenting: I dissent on the first issue, believing that *Estate of Charles Curie*, 4 T. C. 1175, correctly states the law here applicable and should be followed.

KERN and TIETJENS, *JJ.*, agree with this dissent.