ESTATE OF LENA R. ARENTS, UNITED STATES TRUST COMPANY OF NEW YORK AND GEORGE ARENTS, EXECUTORS, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 65650. Filed May 23, 1960.

*Leslie D. Dawson, Esq.*, for the petitioner.
*James J. Quinn, Esq.*, for the respondent.

#### OPINION.

WITHEY, *Judge:* Respondent determined a deficiency in estate tax in the amount of $286,672.64.

The issue presented for our decision is the correctness of the respondent's action in determining that the value of the principal of a trust fund created by the decedent is includible in her gross estate under section 811(c)(1)(B) of the Internal Revenue Code of 1939. Additional issues presented by the pleadings have been settled by stipulation.

All of the facts have been stipulated and are found accordingly.

Lena R. Arents died on March 11, 1954. On December 29, 1954, a Federal estate tax return was filed with the director of internal revenue for the Upper Manhattan District of New York.

On April 29, 1918, George Arents, husband of the decedent, applied for and obtained an insurance policy on his own life in the amount of $200,000 from the New York Life Insurance Company. On November 6, 1918, he applied for and obtained an insurance policy on his own life in the amount of $90,000 from the New York Life Insurance Company. On May 28, 1920, he assigned each of

these policies to the decedent. On October 4, 1924, he obtained a policy of insurance on his own life in the amount of $100,000 from the Travelers Insurance Company which he assigned to the decedent on October 20, 1924. On November 12, 1925, he obtained an insurance policy in the amount of $10,000 on his own life from the Penn Mutual Life Insurance Company which he assigned to the decedent on November 17, 1925. Lena was the beneficiary originally named in all of the life insurance policies except the policy issued by the Travelers Insurance Company on October 4, 1924, in which the beneficiary was designated as "Executors, Administrators or Assigns of the Insured."

On June 4, 1932, the decedent created an irrevocable inter vivos trust and transferred thereto all of the above-described life insurance policies assigned to her by George Arents, together with certain securities which at that time had a fair market value of $384,250. The decedent also executed and delivered to the United States Trust Company of New York, the trustee designated under the trust instrument, separate assignments of each of the insurance policies, together with separate stock powers covering the securities. The terms of the trust created by the decedent on June 4, 1932, in pertinent part, are as follows: [1]

FIRST: To hold, manage, sell, invest and reinvest all the property set forth and described in Schedule B hereto, and collect the income therefrom; and after defraying the expenses incurred in the administration of the trust, including Trustee's commission, to devote the remainder of said income (a) to the payment of all premiums on said life insurance policies set out and described in Schedule A hereto as such mature, with the direction to and duty on Trustee to utilize in part payment of said premiums any dividends that may accrue from the insurer to the Trustee on account of said policies or any of them so long as premiums are due or to become due, and if at any time a dividend accrues to the Trustee on an insurance policy to an amount greater than the premium on that policy, then such excess shall be applied pro tanto to the payment of premiums on other policies. This utilization of part of the income from the trust to the payment of insurance premiums shall continue during the whole time that payments of premiums on said policies or any of them are payable or to become payable. If during said period as aforesaid the income from the property set forth and described in Schedule B hereto, along with dividends on policies, shall at any time be insufficient to make payment of premiums, Trustee shall give reasonable notice of such deficiency and the amount thereof to Grantor, and Grantor shall have the right to furnish Trustee funds to pay such premiums, and Trustee shall so apply such funds; if with respect to any life insurance premium Trustee shall be without funds from the income from property set forth and described in Schedule B hereto, and/or from dividends on policies, and without funds furnished by Grantor, then Trustee shall collect the cash surrender value of such policy, and utilize the

---

[1] George Arents, husband of the decedent, is referred to in the trust deed as George Arents, Jr., and the one son, George Arents, Jr., is referred to in the trust deed as George Arents III.

funds so collected just as if the funds had arisen from the sale, as hereinafter provided, of any of the property set forth and described in Schedule B hereto. (b) The balance of the income from the property set forth and described in Schedule B hereto (if that property continued in the trust), or if such income results from any sale of property and reinvestment of the proceeds of sale as hereinafter provided, shall be paid quarterly to Grantor as long as she shall live; if collections are made by the Trustee under said life insurance policies set forth and described in Schedule A hereto other than dividends on policies as hereinbefore provided, whether such collections are made on account of the death of said George Arents, Jr., or are made for any reason before his death, then the income and profits arising from such collections of insurance and investment thereof as hereinafter provided, shall be added to the other income, and likewise paid to Grantor during her life, as is provided herein as to the income arising from the property set forth and described in Schedule B hereto; if George Arents, Jr., the husband of Grantor, survives Grantor, then the in-come arising from said trust, subject to the payment of insurance premiums by Trustee as above set out, and with the right after the death of Grantor in said George Arents, Jr., to supply a deficiency, shall be paid quarterly to him for and during the term of his life.

SECOND: Upon the death of the survivor of Grantor and her husband, the said George Arents, Jr., and if their son George Arents III shall then survive, the Trustee shall (having theretofore collected the insurance on the life of George Arents, Jr., hereinbefore conveyed and transferred to it) deliver and/or pay the whole corpus of the trust to said son. If the said George Arents III predeceases Grantor, Grantor may at any time thereafter, by written instrument under seal, name a new beneficiary or beneficiaries for the corpus of the trust; if said George Arents III, having survived Grantor, predeceases his father George Arents, Jr., then, in like manner, George Arents, Jr., may, by instrument under seal filed with the Trustee, name a new beneficiary or bene-ficiaries. If, however, said George Arents III does not survive Grantor and/or said George Arents, Jr., and there has been no designation as aforesaid of a new beneficiary or beneficiaries, then upon the death of the survivor of Grantor and George Arents, Jr., the corpus of the trust shall be paid and delivered to those who would have been the next of kin of said George Arents III, as then provided by the statutes of distribution and descent of the State of New York, if the said George Arents III had died on the day following the death of the survivor of the two, Grantor and George Arents, Jr.

With respect to the trust hereby created, and effective during the life of Grantor as well as after her death, it is understood and agreed:

A. The Trustee assumes no obligation nor duty to pay otherwise than out of income from property delivered to it, any life insurance premiums, but it does assume the duty and obligation of paying life insurance premiums as and so long as any are owing and as they fall due on the life insurance policies held in trust by it, in so far as the income from the trust property currently collected permits. * * *

B. The trustee may hold as a part of the corpus hereby created the securities set forth and described in Schedule B hereto, and shall not be liable for any loss to the trust estate by reason of decrease in value of such securities; Trustee may sell the above described securities or any part thereof, or any other securities or the proceeds thereof forming a part of the trust funds, and may invest any cash at any time standing to the credit of the corpus of the trust estate in other securities, but it may and shall make such disposition and reinvestment only upon direction as hereinafter provided. This provision is to

control and protect Trustee, whether or not such securities as are assigned hereby or such new other securities are legal investments for trust funds under the laws of the State of New York. In case of the collection of or on any of said insurance policies pending this trust (other than the collection of dividends to be used as hereinbefore provided in payment of premiums), the moneys so collected shall be invested just as the Trustee is directed hereby to invest moneys coming to it from a sale of securities hereby conveyed, assigned and delivered to it mentioned and described in Schedule B hereto.

C. During the life of the husband of the Grantor, George Arents, Jr., and after his death during the life of Grantor herself, no sales or exchanges of property which at any time comprise the trust fund, and no change in the investment of the trust fund, and no investment of moneys collected, shall be made by the Trustee except under the written direction given by George Arents, Jr., during his life, and after his death by written direction given by Grantor. This has only the exception that if during the life of said George Arents, Jr., he shall by sickness or by other disability be prevented from giving written direction, or if he by writing substitutes Grantor for himself as to giving such written direction, Grantor may give such written direction in lieu thereof; and if after his death Grantor shall be under disability as aforesaid or shall give written directions appointing her son George Arents III to give directions, then Trustee shall act upon the direction of said George Arents III. In case of the collection of insurance policies upon the death of said George Arents, Jr., and for thirty days after such collection Grantor gives no direction for the investment of the proceeds thereof, and said George Arents III surviving gives no direction as hereinbefore provided, then Trustee may at its discretion make investment of cash so collected, but in making such investment it shall be confined to legal investments for trust funds under the laws of the State of New York.

\*        \*        \*        \*        \*        \*        \*

The rights of each and every of the parties at any time interested in the trust estate hereby created shall be determined, controlled and governed by the laws of the State of New York.

George Arents paid all of the premiums on the insurance policies until he assigned them to the decedent. After the assignment thereof and until transfer of the policies to the trust, the decedent paid all of the premiums from her own funds. As of June 4, 1932, the life insurance policies were transferred to the trust created on that date and the premiums on the policies were thereafter paid in accordance with the terms of the trust.

The net income from the securities conveyed to the trust created by decedent for the period beginning June 4, 1932, and ending on March 11, 1954, the date of her death, amounted to $858,125.16. Life insurance premiums in the amount of $248,335.36 were paid by the trustee out of the net income of the securities and amounted to 28.93 per cent of the net income therefrom. The balance of the net income from the securities, amounting to 71.07 per cent thereof, or $609,789.80, was paid to the decedent or held for her account at her death.

At the date of the death of the decedent the four life insurance policies held in trust had a fair market value of $291,074.44 and the

securities and uninvested cash held in trust at that time had a gross value of $763,179.78 or a total value of $1,054,254.22. At the date of her death the decedent was 79 years of age, and her son, George Arents, Jr., was 38 years of age. The value of decedent's retention of the right to designate a new beneficiary of the corpus of the trust should her son (who is the beneficiary designated in the trust instrument) predecease her was 2.65 per cent of the total value of the trust corpus immediately prior to her death.

The respondent has taken the position that the value of the entire corpus of the trust created by Lena R. Arents on June 4, 1932, is includible in her gross estate under section 811(c)(1)(B) of the 1939 Code,[2] because she had retained for her life the possession or enjoyment of the entire trust property.

The petitioner concedes that inasmuch as the decedent reserved to herself the income arising from the securities held in trust in excess of the amount required to pay the premiums on the life insurance policies, to that extent the value of the securities is includible in her gross estate. The contention of the petitioner, however, is that since the trust in question was created by Lena R. Arents on June 4, 1932, the portion of the corpus of the trust represented by the four insurance policies is excluded from the operation of section 811(c)(1)(B) by the last sentence of section 811(c) which provides that—

Subparagraph (B) shall not apply to a transfer made before March 4, 1931; nor shall subparagraph (B) apply to a transfer made after March 3, 1931, and before June 7, 1932, unless the property transferred would have been includible in the decedent's gross estate by reason of the amendatory language of the joint resolution of March 3, 1931 (46 Stat. 1516).

The petitioner contends that the part of the trust assets represented by the insurance policies would not be includible in the decedent's

---

[2] SEC. 811. GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

\* \* \* \* \* \* \*

(c) TRANSFERS IN CONTEMPLATION OF, OR TAKING EFFECT AT, DEATH.—

(1) GENERAL RULE.—To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise—

\* \* \* \* \* \* \*

(B) under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (i) the possession or enjoyment of, or the right to the income from, the property, or (ii) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; \* \* \*

\* \* \* \* \* \* \*

Subparagraph (B) shall not apply to a transfer made before March 4, 1931; nor shall subparagraph (B) apply to a transfer made after March 3, 1931, and before June 7, 1932, unless the property transferred would have been includible in the decedent's gross estate by reason of the amendatory language of the joint resolution of March 3, 1931 (46 Stat. 1516).

gross estate under the amendatory language of the joint resolution of March 3, 1931. It also insists that the portion of the securities held in trust for the purpose of producing income for the payment of premiums on the life insurance policies is not includible in the gross estate.

The provisions of the trust instrument executed by the decedent are not uniformly applicable to the entire corpus of the trust. Two types of property are included in the trust fund—securities and life insurance policies. The income arising from the securities was to be used to pay the balance of the premiums due on the life insurance policies transferred in trust after prior application thereto of all dividends therefrom and, in the event of any excess income from the securities, the entire amount of such excess income was payable to the decedent for life.

The decedent clearly did not retain any right to the possession or enjoyment of that part of the corpus of the trust represented by the portion of the securities utilized for the purpose of paying the premiums on the insurance policies. All of the securities were irrevocably transferred to the trustee. The settlor-decedent retained the right to the enjoyment of only that portion of the income arising therefrom as would exceed the amount required for the payment of the insurance premiums. Under such circumstances, the respondent is without any basis for asserting that the transferor retained rights of possession or enjoyment over that portion of the securities to which the insurance premiums were attributable. Regs. 105, sec. 81.18; *Commissioner* v. *Estate of Holmes*, 326 U.S. 480; *Frances P. Bolton*, 1 T.C. 717; *Jesse S. Phillips*, 12 T.C. 216. Nor does respondent's Regulations 105, section 81.18, have application to that portion of the income from the securities used to pay premiums for decedent had no liability or obligation to pay such premiums. She was merely an assignee of the policies and undertook no legal obligation with respect thereto under the trust deed or otherwise. *First Nat. Bank of Birmingham et al., Executors*, 36 B.T.A. 651; *Helvering* v. *Reybine*, 83 F. 2d 215. Finally, the value of the securities to which the premium payments are attributable cannot be held to have been conveyed in trust with a reservation of income to the settlor on the basis that the premium payments represented the application of income for her pecuniary benefit pursuant to the provisions of the respondent's regulations. Regs. 105, sec. 81.18. The crucial date here is the date of decedent's death, not the date of creation of the trust. That this is correct as a, matter of law is obvious from the language of the Code itself, for section 811 states:

SEC. 811. GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including *the value at the time of his death* of all property, real or personal, tangible

or intangible, wherever situated, except real property situated outside of the United States—

    (a) DECEDENT'S INTEREST.—To the extent of the interest therein of the decedent *at the time of his death;* [Emphasis added.]

In fact, in *Goldstone* v. *United States*, 325 U.S. 687, the Supreme Court, in determining that the decedent retained a reversionary interest under section 302(c) of the Revenue Act of 1926, as amended (section 811(c) of the 1939 Code), stated:

> The disappearance of a decedent's reversionary interest, together with the resulting estate tax liability, prior to death through events beyond the decedent's control is a possibility in many situations such as the one in issue. Likewise a reversionary interest may become vested prior to decedent's death because of the occurrence of other events beyond the realm of the decedent's volition and unconnected in any way with his death. But the imposition and computation of the estate tax are based upon the interests in actual existence at the time of the decedent's death. It follows that only those events that actually occurred prior to that moment can be considered in determining the existence and value of the taxable interests. Events that might have but failed to take place so as to erase a decedent's reversionary interest must be ignored; such unrealized possibilities, if significant at all, only add to the remoteness of the reversionary interest.

See also *Estate of Edson Bradley*, 9 T.C. 145, in which *Goldstone* v. *United States, supra*, was cited in support of the above-quoted proposition that the date of death is the critical time for determining and valuing the interests of the decedent for estate tax purposes. At the date of her death, her husband, the insured, was living, thus rendering impossible any benefit to her or her estate from the premium payments. This portion of the trust income represented 28.93 per cent thereof. With respect to the balance of the securities, the petitioner concedes that the value represented by the excess income paid or payable to the settlor-decedent is includible in her gross estate since she possessed a right to the enjoyment thereof under section 811(c)(1)(B). Since the trust corpus was subject to different provisions, we must treat the different portions of the trust fund separately. Regulations 105, section 81.15, provide that if only a portion of transferred property comes within the terms of the statute, only a corresponding proportion of the value of the property is includible in ascertaining the value of the gross estate. Assuming, as reasonably we may, that the actual application of the trust income effectuated the decedent's intention, we conclude that 28.93 per cent of the value of the securities held in trust, which is the portion required to produce income sufficient to pay the insurance premiums, is not includible in her gross estate. An identical method for determining the proportion of securities held in trust that properly was includible in the gross estate was utilized in *Estate of Paul Garrett*, 8 T.C. 492, affirmed on this point 180 F. 2d 955.

With respect to the trust property represented by the four insurance policies, we are unable to accept the respondent's assertion that the decedent retained for her life the possession or enjoyment thereof. The decedent did not retain the possession or enjoyment of the insurance policies since they were irrevocably transferred to the trustee. The decedent retained no power whatever by which she could have altered, amended, revoked, or terminated the trust. Under no circumstance could she have recaptured any part of the trust property. Upon careful examination of the trust instrument it becomes apparent that the sole remaining rights reserved by the decedent in the trust were the following:

*Decedent reserved the contingent right to receive income from the invested proceeds of any life insurance policy or policies liquidated by the trustee for the purpose of paying the insurance premiums in the event the income arising from the securities was insufficient for the payment of premiums.* In the event the securities held in trust failed to produce income sufficient to pay the insurance premiums, the trustee was given the power under the terms of the trust to cash in one or more of the life insurance policies and apply the proceeds to the payment of the premiums. Any excess remaining from the cash surrender value of a policy or policies so liquidated was to be invested and the income therefrom paid to decedent. The income arising from the securities in fact greatly exceeded the amount of the insurance premiums. At no time during the life of the trust was there any question but that the income from the securities was or would be more than sufficient to pay the insurance premiums. Consequently, the contingency upon which this reservation depended never occurred. Since the requisite condition precedent did not occur, this reservation was meaningless and without value.

In *Daisy Christine Patterson, Executrix*, 36 B.T.A. 407, the decedent created an irrevocable trust, reserving the income to himself for life with the remainder over to designated beneficiaries. The trust instrument gave to the trustees the power, in the event the net income should be insufficient for the support and maintenance of the decedent, to use and disburse from time to time the principal of the trust for that purpose. During the decedent's lifetime the net income was never insufficient to provide for his support and maintenance and no part of the trust corpus was so used. The respondent there contended that the property held in trust should be includible in the decedent's gross estate under section 302(d) of the Revenue Act of 1926, which provided for the inclusion in the gross estate of the value at the time of death of all property—

To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was sub-

ject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke * * *

In rejecting the respondent's contention, we stated:

> The fallacy of respondent's argument lies in the fact that at the date of his death the decedent had no power to use any of the principal of the trust and never had possessed that power. The power of the trustees to use any part of the trust corpus for the support and maintenance of Frank H. Patterson was contingent upon a state of facts which never arose, i.e., when the net income of the trust was insufficient for the comfortable support, maintenance, and care of the transferor. This limitation on their power was recognized both by the trustees and the transferor, and the trustees never used nor were they asked to use any of the principal for that purpose.

> *     *     *     *     *     *     *

> Since the power granted the trustees to disburse any part of the trust corpus of the Frank H. Patterson trust was not absolute, but conditional upon a certain contingency which did not happen during the decedent's lifetime and which he did not control, we hold that at the time of his death the decedent did not have the power, either alone or in conjunction with any other person, to change or alter the trust by diverting the property to himself. *Tait* v. *Safe Deposit & Trust Co. of Baltimore*, 74 Fed. (2d) 851.

> * * * There was here nothing more than a remote possibility that the contingency might occur which would give the trustees power to disburse trust corpus. Cf. *Helvering* v. *St. Louis Union Trust Co.*, *supra* [296 U.S. 39]. Upon the facts in the record we think the Commissioner erred in including the value of the trust property in the gross estate of the decedent.

In several other decisions it has been held that a power held by the decedent exercisable only upon the occurrence of an event which did not happen during his life is not a "power to alter, amend, or revoke" within the meaning of section 811(d) of the 1939 Code. *Estate of Milton J. Budlong*, 7 T.C. 756; *Jennings* v. *Smith*, 161 F. 2d 74; *Day* v. *Commissioner*, 92 F. 2d 179; *Tait* v. *Safe Deposit & Trust Co. of Baltimore*, 74 F. 2d 851.

In *Hubbard's Estate* v. *Commissioner*, 250 F. 2d 492, reversing our decision in *Estate of Debe W. Hubbard*, 26 T.C. 183, the decedent possessed the right to receive all of the income in excess of $750 a month from a trust imposed by a Probate Court from property left by her deceased husband. It was there found that the trust had never earned any income in excess of $750 per month. The Court of Appeals for the Fifth Circuit held: "We * * * conclude that such right was all form and no substance, and that the evidence showed it to be wholly without value."

Even if it be conceded that Lena R. Arents possessed an actual "right" to trust income at the time of her death, it is obvious that it was dependent upon a contingency so remote as to render it incapable of valuation. *Humes* v. *United States*, 276 U.S. 487; *Estate of Charlotte D. M. Cardeza*, 5 T.C. 202, affd. 173 F. 2d 19; *Estate of Pompeo*

*M. Maresi*, 6 T.C. 582; cf. *Robinette* v. *Helvering*, 318 U.S. 184. Referring to the age of the decedent at the time of her death (79) and the actual earnings of the trust throughout its existence, which amounted to more than three times the cost of the insurance premiums, it is apparent that at the time of her death her contingent right to receive income from the invested proceeds of any insurance policy which might be liquidated by the trustee to pay any deficit in the premiums was totally valueless. Cf. *Huntington National Bank*, 13 T.C. 760; *Estate of Irma E. Green*, 22 T.C. 728.

*Decedent reserved the right to receive income arising from the insurance policies.* Aside from the dividends earned by the policies which were directed under the trust instrument to be applied to the payment of premiums, the policies were nonproductive. Consequently, the sole income arising from the policies by way of dividends (the amount of which is not shown by the record herein) was reflected by the increase in the overage or excess investment income which the decedent received during her life. The trustee was without power to collect on the policies during the life of the decedent's husband (who has outlived her) or otherwise to dispose of them. A somewhat similar situation existed in *Estate of Charles C. Smith*, 23 T.C. 367, involving the question whether the decedent was entitled to a marital deduction with respect to amounts paid by him as premiums on life insurance policies which he had transferred in trust. The corpus of the trust consisted solely of insurance policies on the life of the settlor-decedent. A provision appeared in the trust instrument entitling the decedent's wife to receive the net income arising from the trust for her life. We there held this provision to be meaningless, stating:

> There is no provision in the trust deed giving the settlor's wife the right to compel the trustee to convert the insurance policies into income-producing property.
>
> The tenor of the trust deed is that it was the settlor's intention to have the policies retained by the trustee until his death, and to have such income as was received by way of dividends on the policies devoted to their preservation.
>
> The direction contained in subparagraph (b) of the trust deed's paragraph First, respecting the payment of income, was without any substance and impossible of fulfillment, because the entire corpus was of non-income-producing property. *Jesse S. Phillips*, 12 T.C. 216, 223; *Commissioner* v. *Boeing*, 123 F. 2d 86.

*Decedent reserved the right to obtain income arising from the invested proceeds of the life insurance policies held in trust in the event her husband predeceased her.* He in fact survived her. The respondent argues that, even though it was impossible under the terms of the trust for the decedent to receive any income therefrom until after the death of her husband, she nevertheless retained the

"economic benefit" for her life because she meanwhile had the assurance of knowing that if and when her husband died payments of income to her would commence. We are unable to find any support for such a contention and the respondent cites none. The estate tax provisions of the Internal Revenue Code are imposed on the basis of the actual *rights* retained by the decedent at the time of death; they are not applicable to mere possibilities. *Goldstone* v. *United States, supra.*

It does not appear therefore that any of the foregoing rights or reservations held by the decedent herein, either singly or in combination, are sufficient to establish that the decedent retained any measurable "right to the possession or enjoyment" of the trust property (other than the portion conceded by petitioner) which would require its inclusion in her gross estate. Cf. *Commissioner* v. *Estate of Holmes, supra; Frances P. Bolton, supra; Jesse S. Phillips, supra.*

The only remaining question is whether or not the reservation by the decedent under the trust instrument of the right to receive income arising from the invested proceeds of the insurance policies after the death of her husband, who in fact survived her, requires the insurance policies held in trust to be included in her gross estate under the terms of the joint resolution of March 3, 1931. On March 3, 1931, Congress enacted a joint resolution amending section 302(c) of the Revenue Act of 1926 (the predecessor of section 811(c) of the 1939 Code) by adding the following language:

including a transfer under which the transferor has retained for his life or any period not ending before his death (1) the possession or enjoyment of, or the income from, the property or (2) the right to designate the persons who shall possess or enjoy the property or the income therefrom * * *

The congressional purpose underlying the enactment of the joint resolution was the modification of the effect of three per curiam opinions of the Supreme Court on March 2, 1931 (*Burnet* v. *Northern Trust Co.*, 283 U.S. 782; *Morsman* v. *Burnet*, 283 U.S. 783; *McCormick* v. *Burnet*, 283 U.S. 784), which had followed *May* v. *Heiner*, 281 U.S. 238, and held that a transfer in trust under which the transferor reserved a life interest was not includible in his gross estate at the time of his death under section 302(c) of the Revenue Act of 1926. *Commissioner* v. *Estate of Church*, 335 U.S. 632; *Marks* v. *Higgins*, 213 F. 2d 884; *Estate of Robert J. Cuddihy*, 32 T.C. 1171.

Section 302(c) of the 1926 Act was further amended by section 803 of the Revenue Act of 1932, which imposed an estate tax upon any transfer pursuant to which the decedent had reserved income "for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death."

The purpose of this amendment was explained in identical language in the reports issued by both the House Ways and Means Committee and the Senate Finance Committee which state as follows:

The purpose of this amendment to section 302(c) of the Revenue Act of 1926 is to clarify in certain respects the amendments made to that section by the joint resolution of March 3, 1931, which were adopted to render taxable a transfer under which the decedent reserved the income for his life. The joint resolution was designed to avoid the effect of decisions of the Supreme Court holding such a transfer not taxable if irrevocable and not made in contemplation of death. Certain new matter has also been added, which is without retroactive effect.

The changes are:

(1) The insertion of the words "or for any period not ascertainable without reference to his death," is to reach, for example, a transfer where decedent reserved to himself semiannual payments of the income of a trust which he had established, but with the provision that no part of the trust income between the last semiannual payment to him and his death should be paid to him or his estate, or where he reserves the income, not necessarily for the remainder of his life, but for a period in the ascertainment of which the date of his death was a necessary element.

(2) The insertion of the words "or for any period which does not in fact end before his death," which is to reach, for example, a transfer where decedent, 70 years old, reserves the income for an extended term of years and dies during the term, or where he is to have the income from and after the death of another person until his own death, and such other person predeceases him. This is a clarifying change and does not represent new matter. [H. Rept. No. 708, 72d Cong., 1st Sess. (1932), pp. 46–47; S. Rept. No. 665, 72d Cong., 1st Sess. (1932), pp. 49–50.]

It is clear from this expression of congressional intent that one of the purposes of Congress in using the phrase "for any period which does not in fact end before his death" was to reach an inter vivos transfer in trust under which the transferor reserves the income after the death of another person for the balance of his own life, and the other person dies first. Substantially the same language was already contained in the joint resolution of March 3, 1931, and was only technically amended by the Revenue Act of 1932 for purposes of clarity.

The phrase "for any period not ascertainable without reference to his death" was new matter incorporated in the revenue acts for the first time in 1932. The legislative history surrounding the adoption of this amendment does not contain a specific example such as those last above noted of the type of transfer that Congress intended by its enactment to reach. However, as a result of subsequent judicial decisions, it has become apparent that this language was added by Congress for the purpose of reaching a transfer in trust creating both a primary and secondary life estate where the first life tenant survived, i.e., a trust under which the decedent reserved a life inter-

est commencing after the death of another person who in fact survived him.

With respect to trusts created after June 6, 1932, a number of courts have held that the statutory phrase "for any period not ascertainable without reference to his death" was enacted by Congress for the purpose of eradicating any part of the interpretation of the Supreme Court in *May* v. *Heiner*, *supra*, which the joint resolution of March 3, 1931, and the other language in the amendments of 1932 might possibly have left open; and, further, that this statutory language was intended to require the inclusion in the gross estate of a decedent of the value of property transferred in trust subject to a secondary life estate in the decedent where the first life tenant actually survives. *Commissioner* v. *Nathan's Estate*, 159 F. 2d 546, certiorari denied 334 U.S. 843, reversing 6 T.C. 605; *Marks* v. *Higgins*, *supra; Hubbard's Estate* v. *Commissioner*, *supra; Estate of Herman Hohensee, Sr.*, 25 T.C. 1258.

In *Estate of Herman Hohensee, Sr.*, *supra*, the decedent and his wife in 1933 transferred property to an irrevocable trust, each reserving one-half of the income for life and all of the income to the survivor. We there held that one-half of the property placed in trust by the decedent was includible in his gross estate because he had retained a life estate and, further, that the other half was also taxable because the trust was created after June 6, 1932, and the decedent had reserved a secondary life estate after the death of his wife who in fact survived him. In so holding, we there stated:

> The part which he retained constituted, in effect, a life estate in one half and a reversionary life estate in the remainder after the prior estate for his wife's life. As of the date of the transfer it was impossible to tell how much decedent would get without knowing when he would die—in other words, a time not ascertainable without reference to his death. * * *
>
> If there were doubt about the correctness of this construction of section 811(c), Internal Revenue Code of 1939, it should be completely dispelled by the committee reports in connection with the Technical Changes Act of 1949.[2] This decedent died after the enactment of that legislation. In reenacting section 811(c) so as to apply in full to transfers after June 7, 1932 (which this was), the Conference Committee states explicitly: "The expression 'not ascertainable without reference to his death' as used in section 811(c)(1)(B) * * * *includes the right to receive the income from transferred property after the death of another person who in fact survived the transferor* * * *" [Fn. omitted.]

An issue identical to the question before us was presented in *Hubbard's Estate* v. *Commissioner*, *supra*. There, the decedent was the income beneficiary under a trust imposed by the Probate Court upon property left by her deceased husband. Her husband's former wife was the primary life beneficiary to the extent of $750 per month. Decedent was to receive all of the trust income in excess of that amount as well as the assets distributable upon the termination of

the trust at the death of the first wife. On January 26, 1932, she irrevocably transferred in trust her present and future interest in the trust created by the Probate Court, subject to the prior right of her deceased husband's first wife to receive $750 a month for life. The respondent asserted that the decedent's transfer in trust on January 26, 1932, of her entire beneficial interest in the first trust was includible in her gross estate under section 811(c). Since the transfer there in question occurred prior to June 7, 1932, it would be taxable only under the joint resolution of March 3, 1931. The parties there stipulated that if any amount was includible in the estate of the decedent pursuant to the transfer, it was $132,461.86. We therefore found that the decedent's present but uncertain right to all of the trust income in excess of $750 a month was susceptible of valuation. We stated in our opinion in that case:

If the only retained income interest had been the reversionary life estate, it might be that the property would not be includible. Cases⁰ reaching a contrary result as to transfers after June 7, 1932, rely partly upon the language "for any period not ascertainable without reference to his death" which was added by the 1932 amendments and explicitly termed a change of substance in the Committee Report. * * *

*　　*　　*　　*　　*　　*　　*

* * * Since, in addition to the reversionary life estate, decedent retained a valuable right to excess income for a period which did not end before her death, we think the stipulated value of the transfer is directly encompassed within the language of the Joint Resolution and is to be included in the gross estate. [Fn. omitted.]

In *Hubbard's Estate* v. *Commissioner, supra,* the Court of Appeals for the Fifth Circuit, in reviewing our decision in *Estate of Debe W. Hubbard, supra,* agreed with our construction of the joint resolution of March 3, 1931, and the subsequent amendments added in 1932. The court disagreed with our interpretation of the stipulated amount and reversed our decision on the ground that the decedent's present right to excess income during the life of her deceased husband's first wife was incapable of valuation. The court therefore found that the decedent had only a secondary life estate that would commence upon the death of the first wife, who actually survived. In holding that the transfer in trust made by the decedent in 1932 was not includible in her gross estate, the court stated:

There was clearly no right reserved to Debe of income for her life, nor was there any right retained for a period not ending before her death. The phrase "for any period not ascertainable without reference to his death", included in the 1932 amendment was regarded by the Congressional Conference Committee as a change of substance. C.B. 1939-1 (Part 2) 496, 532. The Conference Committee in reporting on the Technical Changes Act of 1949, 63 Stat. 891, interpreted the phrase "not ascertainable without reference to his death" as covering a situation such as we have before us where the right was to receive

the income after the death of another who survived the donor. Report of Conference Committee on H.R. 5628, 81st Cong. 1st Sess. p. 5. Such has been the judicial construction. *Marks v. Higgins*, 2 Cir., 1954, 213 F. 2d 884. Such is the effect of an earlier decision of the Tax Court. Such is a reasonable construction. Estate of Charles Currie, 1945, 4 T.C. 1175. We are therefore of the view that a transfer in trust made before the effective date of the 1932 amendment where the donor's right to income is postponed until the death of another who survived the donor is not to be included as a part of the donor's estate. * * *

It appears from the foregoing expressions of congressional and judicial opinion that neither Congress nor the courts regarded an inter vivos transfer in trust subject to a prior income interest in another who actually survives as having been encompassed within the provisions of the joint resolution of March 3, 1931. Accordingly, under the holding of the Court of Appeals in *Hubbard's Estate* v. *Commissioner*, supra, and in the light of our opinion in *Estate of Debe W. Hubbard*, supra, it seems apparent that where an inter vivos transfer in trust occurred during the interval between March 3, 1931, and June 7, 1932, under which the settlor-decedent reserved a life interest in the trust income commencing after the death of another person who actually survived him, the transferred property is not includible in the deceased transferor's gross estate under the provisions of the joint resolution of March 3, 1931. We are aware of no contrary decisions on this point and the respondent has cited none. The respondent contends that the transfer in trust here in question is not within the scope of the statutory amendment adopted in the Revenue Act of 1932, which requires the inclusion in the gross estate of property transferred in trust with the retention of a right to income for any period not ascertainable without reference to the decedent's death, because decedent's husband did not have a primary life estate since he was not himself entitled to receive trust income during his life. This argument was raised by the respondent in *Estate of Florence B. Moreno*, 28 T.C. 889, affd. 260 F. 2d 389, and resolved by our decision in that case. There, the decedent's husband in 1939 created a trust with the income payable to him for life and after his death to the decedent for her life. The trust property consisted entirely of insurance on the life of the settlor which was incapable of producing income until his death. The decedent died before her husband. The trust was part of a reciprocal trust arrangement and decedent in effect was the grantor under the principle set forth in *Lehman* v. *Commissioner*, 109 F. 2d 99, affirming 39 B.T.A. 17. We there held that the trust property was includible in the decedent's gross estate under section 811(c)(1)(B) of the 1939 Code because of her reservation of the right to income after the death of her husband who in fact survived her. We also held that

the question of whether a settlor-decedent has retained an interest in trust income commencing after the death of another person for "any period not ascertainable without reference to his death" is unaffected by the fact that the other person did not have an actual life interest. The beneficial life interest retained by the transferor is the same regardless of whether or not the person upon whose death the transferor's interest depends, himself, has a life interest or not.

*Decedent reserved the right to designate a new remainderman of the trust corpus in the event her son, George Arents III (the designated remainderman under the trust instrument), predeceased her.* The transfer in trust here in question occurred on June 4, 1932, and was irrevocable, there being no possibility by which the decedent would have been able to recover any part of the trust corpus. The only possibility that could have arisen which would have subjected the transfer to the provisions of section 811(c)(1)(C) was the possibility that the transferred property "may be subject to a power of disposition by him [decedent]" by virtue of the fact that the decedent here retained the power to designate a new remainderman in the event her son predeceased her. He in fact survived, being 38 years old at the time of her death at the age of 79 years. Accordingly, the value of this retained power computed under the tables captioned "Actuarial Values for Estate and Gift Tax" (Internal Revenue Service Publication No. 11) for valuation purposes would have been only 2.65 per cent of the total value of the trust corpus. Under section 811(c)(2),[3] therefore, section 811(c)(1)(C) does not apply to the present transfer even though it were assumed for purposes of argument that decedent had thereby retained a reversionary interest, it being required thereunder that such an interest to be includible must be in excess of 5 per cent of the value of the transferred property (trust corpus).

---

[3] SEC. 811(c)(2). TRANSFERS TAKING EFFECT AT DEATH—TRANSFERS PRIOR TO OCTOBER 8, 1949.—An interest in property of which the decedent made a transfer, on or before October 7, 1949, intended to take effect in possession or enjoyment at or after his death shall not be included in his gross estate under paragraph (1)(C) of this subsection unless the decedent has retained a reversionary interest in the property, arising by the express terms of the instrument of transfer and not by operation of law, and the value of such reversionary interest immediately before the death of the decedent exceeds 5 per centum of the value of such property. For the purposes of this paragraph, the term "reversionary interest" includes a possibility that property transferred by the decedent (A) may return to him or his estate, or (B) may be subject to a power of disposition by him, but such term does not include a possibility that the income alone from such property may return to him or become subject to a power of disposition by him. The value of a reversionary interest immediately before the death of the decedent shall be determined (without regard to the fact of the decedent's death) by usual methods of valuation, including the use of tables of mortality and acturial principles, pursuant to regulations prescribed by the Commissioner with the approval of the Secretary. In determining the value of a possibility that property may be subject to a power of disposition by the decedent, such possibility shall be valued as if it were a possibility that such property may return to the decedent or his estate.

For the foregoing reasons we are of the opinion that neither the portion of the securities to which the insurance premiums were attributable nor the insurance policies transferred in trust by decedent on June 4, 1932, are includible in her gross estate.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

RAUM, *J.*, concurs in the result.

MULRONEY, *J.*, dissents.

PIERCE, *J.*, did not participate in the consideration of or decision in this report.

---

MURDOCK and OPPER, *JJ.*, dissenting: This decedent retained enjoyment of the insurance, since for a period which did not in fact end before her death she was a possible beneficiary of the increased value of the policies and, in any event, they would benefit her son, the object of her bounty.